J-A34023-14

2015 PA Super 61

FREDERICK E. KREPPS AND    :    IN THE SUPERIOR COURT OF
MARGARET M. KREPPS,           :        PENNSYLVANIA
                                   :
           Appellants        :
                                   :
          v.                  :
                                   :
KHRISTIAN SNYDER, DPM AND    :
CHERRY TREE FOOT AND ANKLE   :
SPECIALISTS, P.C.,            :
                                   :
           Appellees       :    No. 449 MDA 2014

Appeal from the Judgment Entered March 6, 2014,
In the Court of Common Pleas of York County,
Civil Division, at No. 07-SU-788-Y01.

BEFORE:  FORD ELLIOTT, P.J.E., SHOGAN, J., and STABILE, J.

OPINION BY SHOGAN, J.:                       **FILED MARCH 24, 2015**

Frederick E. Krepps (individually, "Appellant") and Margaret M. Krepps (collectively, "Appellants") appeal from the judgment entered on March 6, 2014.  After careful review, we affirm.

Appellants filed a medical malpractice complaint on April 11, 2007, alleging that Khristian Snyder ("Appellee"), a podiatrist, and his medical practice, Cherry Tree Foot and Ankle Specialists, P.C., (collectively, "Appellees") negligently failed to follow appropriate amputation prevention procedures for diabetic patients such as Appellant, eventually resulting in the below-the-knee amputation of Appellant's leg.  Lengthy and litigious discovery ensued for four years culminating, in one instance, in imposition of

monetary sanctions against Appellees for failure to respond to Appellants' Expert Witness Interrogatories. Trial Court Order, 1/13/12, at unnumbered 1. Additionally, Appellees did not respond to Appellants' Requests for Admissions for almost a year after they were served with the discovery request, well beyond the thirty-day response time set forth in Pa.R.C.P 4014(b).

After discovery closed, on May 14, 2012, Appellants filed a motion for summary judgment requesting the trial court to: 1) define the legal duty owed by Appellee to Appellant; 2) determine the standard of care that applies in this case; and 3) adjudge Appellees liable. In the event that the trial court decided summary judgment was not warranted, Appellants requested that certain facts be deemed admitted and others be classified as established without controversy. Although the trial court decided that, under Rule 4014(b), statements included in Appellants' Requests for Admissions were considered true for purposes of adjudicating the motion, it ultimately denied awarding summary judgment in Appellants' favor because material issues of fact remained outstanding. Summary Judgment Opinion, 9/14/12, at unnumbered 5–6. Prior to trial, Appellees filed a motion *in limine* to preclude these same admissions from being introduced at trial; the motion was denied as untimely. Trial Court Order, 4/24/2013, at unnumbered 1.

At trial, Appellants' theory of liability was that Appellee was derelict in following appropriate amputation prevention procedures for diabetic patients, specifically, that he failed to perform necessary vascular examinations, failed to order additional vascular studies, failed to properly document Appellant's foot pulses in his medical records, and failed to refer Appellant to a vascular surgeon in a timely manner. Appellants' expert, Dr. Vincent Mandracchia, opined that patients presenting in Appellant's condition — toe ulcer with no palpable foot pulses—must be referred immediately to a vascular surgeon and that podiatrists should document foot pulses each time a patient is seen. Appellee countered that he timely referred Appellant to a vascular surgeon when it appeared that an ulcer on Appellant's left foot was not healing properly. Appellee's expert, Dr. Michael Downey, disagreed that documentation of foot pulses was required each time a patient is seen when the treating podiatrist is familiar with the patient's history and concluded that Appellee met or exceeded the standard of care for a podiatrist treating patients presenting like Appellant.

When testimony concluded, the trial court denied Appellants' request to read admissions allegedly made by Appellee to the jury. It also denied certain of Appellants' requested jury instructions, but did instruct the jury on the "two schools of thought" charge that is relevant in a malpractice action when competent medical authority is divided on a course of treatment. The

jury returned a verdict in favor of Appellees based on its finding that Dr. Snyder was not negligent. Appellants filed post-trial motions, which the trial court denied on March 4, 2014. This appeal followed the entry of judgment in Appellees' favor.

Appellants present the following questions for appellate review:

I. Did The Trial Court Commit Reversible Error By Refusing To Allow Mr. Krepps To Admit Conclusively Established Judicial Admissions Under Pa.R.C.P. 4014(d) Into Evidence?

II. Did The Trial Court Commit Reversible Error By Instructing The Jury On The Two Schools Of Thought Doctrine?

III. Did The Trial Court Commit Reversible Error By Refusing To Grant Mr. Krepps' Points For Charge?

IV. Did The Trial Court Abuse Its Discretion Or Commit An Error Of Law When It Denied Mr. Krepps' Motion for Summary Judgment And Establishment Of Averments Deemed Admitted And Facts Without Controversy When It Failed To:

A. Determine If Dr. Snyder Had An Affirmative Duty To Protect Mr. Krepps From Foreseeable Risk Of Amputation?

B. Determine The Standard Of Conduct That Applied To Dr. Snyder's Care Of Mr. Krepps?

C. Failed To Grant Judgment In Favor Of The Plaintiffs And Against The Defendants?

D. Determined That Facts Existed Without Controversy And Were Deemed Established Under Pa.R.C.P. 1035.5?

Appellants' Brief at 6–7.

I. Exclusion of Admissions

On the last day of trial, Appellants attempted to introduce two exhibits: Appellees' statements that were previously deemed admitted under Rule 4014(b) due to Appellees' failure to timely respond to discovery and proposed admissions that Appellees failed to respond to in any manner. Plaintiffs' Exhibits 36a and 36b, respectively.[1] After some preliminary discussion, Appellants limited their original demand and requested that Admissions numbered ten through twenty-four, excepting Admission number sixteen, included in Exhibit 36a be read to the jury. N.T., 8/8/13, at 659. The trial court agreed in principle that the statements should be deemed admitted because of Appellees' failure to timely respond to Appellants' discovery request, but ruled against admissibility, questioning both the timing of the proffer and its evidentiary value in light of the testimony offered at trial. Making the additional observation that Appellants were not prejudiced by Appellees' late response to the Requests for Admissions, the trial court employed the liberal construction precepts of Pa.R.C.P. 126 to negate operation of Rule 4014(b). N.T., 8/8/13, at 663–664.

Despite the trial court's ruling, Appellants continued to advocate that certain admissions should be read to the jury because they were admitted

---

[1] Exhibit 36b entitled, "Proposed Admissions Not Agreed To By Defendant" was a compilation of facts gleaned from depositions and medical records. N.T., 8/8/13, at 657. In this appeal, Appellants do not contest the trial court's decision precluding admission of Exhibit 36b at trial.

by Appellees in their eventual response to Appellants' Requests for Admissions.[2] The trial court again denied Appellants' request reiterating that admission of this evidence would be repetitive of trial testimony. N.T., 8/8/13, at 665. Appellants' final plea that Admission thirty-two, relating to the availability of non-invasive tests to assess arterial disease, was likewise rejected by the trial court. *Id*. at 665–666.[3]

The trial court expanded on its rationale for its evidentiary ruling on Exhibits 36a and 36b in its opinion denying post-trial relief:

> First, the Court determined it was not appropriate to read the admissions that were not responded to by Defendants because all those admissions were testified to at trial, it would therefore be repetitious to read those admissions to the jury. Second, while the Court agreed in principle that [Pa.R.Civ.P.] 4014(b) provides that Admissions not timely responded to are deemed admitted, the Court was concerned that this issue was not raised by Plaintiffs until the end of the trial. In addition, there was testimony to the effect that Defendants did not in fact agree with all of the Admissions, and the Court believed that this issue would have been more properly raised during testimony or, preferably, pre-trial, *i.e.*, in discovery; further, there was testimony wherein Defendants did in fact admit to some of the admissions, rendering any potential reading of the Admissions into evidence duplicative. The court also determined Admission

---

[2] Specifically, Appellants requested that Admissions ten, seventeen, nineteen, and twenty-one be submitted to the jury. N.T., 8/8/13, at 664. Review of the pleadings reveals that while Appellees admitted to Admissions ten and seventeen, they objected to the statements as hearsay and averred that they would be inadmissible at trial. Defendants' Motion in Limine, Exhibit B at unnumbered 2. Additionally, and contrary to Appellants' representations, Appellees denied Admissions nineteen and twenty-one. *Id*. at unnumbered 2, 3.

[3] We note that Appellee admitted to the availability of these tests at trial. N.T., 8/7/13, at 314–315; 339.

responses were provided at a date not sufficiently late to prejudice the Plaintiffs. Finally, relying on [Pa.R.Civ.P.] 126, a rule rarely relied on by this Court but which the Court believes is intended for cases such as this, the Court liberally construed Rule 4014. For the reasons stated above, the Court's decision was not in error.

Trial Court Opinion Denying Post-Trial Relief, 3/4/14, at 9.[4]  On appeal, Appellants' overarching argument is that the trial court erred when it applied Rule 126 to exclude from evidence Exhibit 36a's recital of facts deemed admitted under Rule 4014(b).

Interpretation and application of Pennsylvania Rules of Civil Procedure present a question of law. Accordingly, our scope of review is plenary. *Keller v. Mey*, 67 A.3d 1, 5 (Pa. Super. 2013) (citing *Gray v. Buonopane*, 53 A.3d 829, 834 (Pa. Super. 2012)).

Pa.R.C.P. 4014 provides in pertinent part:

(a) A party may serve upon any other party a written request for the admission, for purposes of the pending action only, of the truth of any matters . . . set forth in the request that relate to statements or opinions of fact or of the application of law to fact, including the genuineness, authenticity, correctness, execution, signing, delivering, mailing or receipt of any documents described in the request.

(b) Each matter of which an admission is requested shall be separately set forth. The matter is admitted unless, within thirty days after service of the request **or within such shorter or longer time as the court may allow,** the party to whom the

---

[4] In its Pa.R.A.P 1925(a) Memorandum Opinion in Support of Order, the trial court referred this Court to its Opinion and Order Denying Motion for Post-Trial Relief and submitted that no further statement was required. Trial Court Opinion, 4/8/14, at unnumbered 2.

request is directed serves upon the party requesting an admission an answer verified by the party or an objection, signed by the party or by the party's attorney. . . .

* * *

(d) Any matter admitted under this rule is conclusively established unless the court on motion permits withdrawal or amendment of the admission.

Pa.R.C.P. 4014(a), (b), and (d) (emphasis added).

Pennsylvania Rule of Civil Procedure 126 provides:

The rules shall be liberally construed to secure the just, speedy and inexpensive determination of every action or proceeding to which they are applicable. The court at every stage of any such action or proceeding may disregard any error or defect of procedure which does not affect the substantial rights of the parties.

Pa.R.C.P. 126.

In examining the "letter and intent of Pa.R.C.P. 4014," the

Pennsylvania Supreme Court has explained:

The purpose of the procedure provided in Rule 4014 is to clarify the issues raised in prior pleadings with the goal of expediting the litigation process. Rule 4014 is designed to expedite the production and authentication of evidence that is not controverted by the litigants . . . . Rule 4014 permits the court to modify the time for responding to requests for admissions (Pa.R.C.P. 4014(b)); places the burden on the requesting party to move for the clarification and enforcement of defective answers (Pa.R.C.P. 4014(c)); and permits the withdrawal of or amendment to answers to requests for admissions "when the presentation of the merits of the action will be subserved thereby" and where the requesting party has failed to establish that the withdrawal of or amendment to answers to requests for admissions will prejudice that party "in

-8-

maintaining the action or defense on the merits." (Pa.R.C.P. 4014(d) (emphasis added)).

***Stimmler v. Chestnut Hill Hospital***, 981 A.2d 145, 160 n.18 (Pa. 2009) (quoting Goodrich-Amram 2d §4014:1, p. 444) (punctuation omitted).

Our Supreme Court has also spoken on the doctrine of substantial compliance incorporated in Pa.R.C.P. 126. In ***Womer v. Hilliker***, 908 A.2d 269 (Pa. 2006), the Court stated that although it "expect[s] that litigants will adhere to procedural rules as they are written, . . . we have always understood that procedural rules are not ends in themselves, and that the rigid application of our rules does not always serve the interests of fairness and justice." ***Id.*** at 276. ***See also Anthony Biddle Contractors, Inc. v. Preet Allied American Street, LP***, 28 A.3d 916, 924 (Pa. Super. 2011) (Rule 126's doctrine of substantial compliance affords trial courts latitude to overlook procedural defects that do not prejudice party's rights).

Appellants contend that the ***Womer*** holding does not apply to exempt Appellees from Rule 4014(b)'s "deemed admitted" provision because Appellees did not substantially comply with Rule 4014 and because Appellants' rights were substantially affected by Appellees' dilatory conduct. Appellants cite to Appellees' eleven-month delay in submitting responses to the Request for Admissions and Appellees' failure to move affirmatively for relief from the admissions, as provided in Rule 4014(d), as indicative of Appellees' abject disregard for the procedural rules. Appellants also claim

that they were prejudiced by the trial court's refusal to admit Appellees' admissions into evidence because certain averments germane to establishing Appellee's negligence—specifically that: 1) Appellant had undiagnosed and untreated artery disease that progressed; 2) arterial insufficiency is rarely a stable condition in high risk patients; 3) doctors owe a heightened duty of care to high risk patients; and, 4) non-invasive tests exist to assess extent of arterial disease—were transformed from established truths into regular testimony.

We begin by recognizing that the practical effect of the trial court's utilization of Rule 126 to trump Rule 4014(b) was that Appellees' significantly tardy responses to Appellants' Requests for Admissions was excused. The trial court's action thus represented a tacit extension of the thirty-day response time delineated in Rule 4014(b).

We cannot conclude that the trial court erred when it applied Rule 126 to override Rule 4014(b)'s thirty-day response time. First, Rule 4014(b) itself permits the court to extend the time for parties to respond to requests for admissions. While we note with disfavor the cavalier attitude towards the rules of discovery displayed by Appellees throughout this litigation, the responses to the Requests for Admissions were filed eighteen months before the start of trial, a significant time for Appellants to conduct additional

discovery if they felt the same was necessary after receiving Appellees' responses.

Second, we agree with the trial court that Appellants waited too long in the trial process to request admission of Exhibit 36a. At the point Appellants proposed that the exhibit be read to the jury, two days of testimony on the subject matter of the admissions had been presented to the jury. *See P.C.S. v. J.E.B.*, 659 A.2d 1043, 1048 (Pa. Super. 1995) (party advocating that unanswered admissions be deemed accepted as true should have lodged objection before lengthy testimony contradicting the admissions was taken at trial).

Third, as to any prejudice suffered, Appellants claim that the trial court's application of Rule 126 converted the nature of some of the testimony presented to the jury from admitted to debated. Thus, the jury was not compelled to accept these facts as true; rather, it was free to employ its discretion to weigh the credibility of all of the testimony on these matters.

We agree in theory with Appellants' description of the legal effect of the trial court's decision to employ Rule 126; however, the trial court determined that no prejudice was suffered because Appellees' responses were filed "at a date not sufficiently late to prejudice [Appellants]," without comment on how the nature of the testimony was implicated. Trial Court

Opinion, 3/4/14, at 9. We conclude that the trial court accurately emphasized the timing factor.

In *Estate of Borst v. Edward Stover Sr. Testamentary Trust*, 30 A.3d 1207, 1211 (Pa. Super. 2011), a case involving whether particular statements that the trial court deemed admitted under Rule 4014(b) were actually conclusions of law and, therefore, beyond the permissible scope of requests for admissions, this Court had occasion to comment on the concept of prejudice resulting from permitting withdrawal of an admission. Quoting *Dwight v. Girard Medical Center*, 623 A.2d 913, 916 (Pa. Cmwlth. 1993), we observed that "[t]he test of prejudice turns on whether a party opposing the withdrawal [of an admission] is rendered less able to obtain the evidence required to prove the matters which had been admitted." *Borst*, 30 A.3d at 1211. So too here, whether Appellants suffered prejudice from the court's acceptance of Appellees' *nunc pro tunc* responses should focus on the timing of their filing in relation to the commencement of trial. Since the record reveals that Appellees' responses contesting liability were served on February 20, 2012, eighteen months prior to the start of trial on August 5, 2013, we find no error in the trial court's conclusion that Appellants failed to demonstrate prejudice.

Finally, the trial court's decision to accept Appellees' late responses was consistent with Rule 4014's merit-based approach to litigation and the

case law instructing that the purpose of the procedures outlined in Rule 4104 is to clarify the issues, streamline the lawsuit's process, and authenticate uncontroverted evidence. *Stimmler*, 981 A.2d at 160 n.18. Rule 4014(b) should not be applied solely as a punitive measure when, as here, Appellees eventually complied with the discovery request, and there was no showing of prejudice. The trial court's decision also reflects an acknowledgment that strict application of procedural rules may not comport with the interests of fairness and justice. *Biddle Contractors*, 28 A.3d at 924. For these reasons, we find no error in the trial court's interpretation and application of the procedural rules.[5]

II. Two Schools of Thought Jury Instruction

Appellants next argue that the trial court erred when it instructed the jury on the two schools of thought doctrine. We conclude that this issue was not properly preserved for appeal due to Appellants' failure to lodge a specific and timely objection to the trial court's instruction.

Prior to instructing the jury, the trial court and counsel discussed the parties' proposed points for charge. Appellees' Proposed Point for Charge Number 28 requested the trial court to instruct the jury on the two schools

---

[5] Because we conclude that the court did not err in this regard, we need not confront Appellants' ancillary issue of whether the Admissions that they requested be read to the jury, namely, Exhibit 36a, can be considered repetitive of trial testimony because misapplication of Rule 126 converted facts relevant to alleged acts of negligence from established as true into ordinary testimony.

of thought doctrine, a principle applied in medical malpractice cases when competent medical authority is divided on the appropriate course of treatment for a particular patient or in a particular medical situation. ***Jones v. Chidester***, 610 A.2d 964, 969 (Pa. 1992). Defendants' Proposed Points for Charge, 7/29/13, at 30. The trial court accepted the point for charge without objection from Appellants. N.T., 8/8/13, at 685. After closing arguments, the trial court included the two schools of thought instruction in its charge to the jury as requested by Appellees and, again, Appellants did not lodge an objection to the instruction prior to the jury retiring for its deliberations.

> After the jury left the courtroom, the following exchange occurred:
>
> [Appellants' Counsel]: Your Honor, I did want to note an objection on the record about the two schools of thought doctrine that you instructed on. I object to that.
>
> THE COURT: Okay. Thank you very much. And I apologize, I should have asked both of you before they went out.

N.T., 8/9/13, at 788.

Under Pa.R.C.P. 227(b), objections to jury instructions must be made before the jury retires to deliberate, unless the trial court specifically allows otherwise. ***Passarello v. Grumbine***, 87 A.3d 285, 292 (Pa. 2014). Additionally, if a party fails to object specifically to a trial court's jury instruction, the objection is waived and cannot be raised in a subsequent appeal. ***Cruz v. Northeastern Hospital***, 801 A.2d 602, 610–611 (Pa.

Super. 2002) (quoting **Randt v. Abex Corporation**, 671 A.2d 228, 232 (Pa. Super. 1996)). Further, we will not consider a claim on appeal which was not called to the trial court's attention at a time when any error committed could have been corrected. "'[O]ne must object to errors, improprieties or irregularities at the earliest possible stage of the adjudicatory process to afford the jurist hearing the case the first occasion to remedy the wrong and possibly avoid an unnecessary appeal to complain of the matter.'" **Keffer v. Bob Nolan's Auto Service, Inc.**, 59 A.3d 621, 645 (Pa. Super. 2012) (quoting **McManamon v. Washko**, 906 A.2d 1259, 1274 (Pa. Super. 2006)) (quotation omitted).

It is undisputed that Appellants here did not object to the propriety of the two schools of thought jury instruction when Appellees proposed the charge, when the trial court accepted the point for charge, and prior to the jury's dismissal to begin deliberations. It was only after the jury retired that Appellants presented their challenge to the instruction. However, Appellants did not identify the legal basis for their objection, did not request that the trial court make a ruling on their objection, or request that the court recall the jury for supplemental instructions. In other words, nothing in Appellants' perfunctory objection provided the trial court with a basis to remedy any possible error in the jury instruction.

Also, we have considered and rejected the notion that the trial court's candid acknowledgment that it should have asked for counsels' input prior to releasing the jury to commence deliberations relieves Appellants from the mandate of Rule 227(b) in that the rule empowers the trial court to specify another time when objections to jury instructions will be accepted. Even recognizing the trial court's oversight, its misstep did not equate to an override of Rule 227(b)'s timing dictate, nor did it relieve Appellants of their duty to present objections to the instruction before the jury deliberates. The court is not obligated to ask counsel if he has objections; rather, counsel is required, in a timely manner, to note affirmatively any protestations concerning the conduct of the proceedings. For these reasons, we conclude that Appellants waived their claim that the two schools of thought instruction was not appropriate in this matter.

III. Refusal of Appellants' Proposed Points for Charge—Standard of Care

Appellants proposed that the jury be instructed that the standard of care owed by a physician varies according to the degree of danger posed by a patient's condition. Plaintiffs' Points for Charge, 8/5/13, at 3. Specifically, Appellants suggested that because Appellant was a patient at risk of amputation, the jury should have been instructed that Appellee should be held to a magnified standard of care. Appellants also proposed that the jury be specifically instructed that the applicable standard of care required a

-16-

podiatrist to promptly refer a patient in Appellant's condition to a vascular surgeon. Plaintiffs' Points for Charge, 8/5/13, at 7. The trial court rejected Appellants' Proposed Point 3 and provided its own instruction on the duty of care question. It likewise refused Proposed Point 7, observing that the request for a specific podiatric standard of care instruction was unnecessary as its substance was fully addressed by its own instructions. Trial Court Opinion, 3/4/14, at 13.

Our standard of review regarding jury instructions is limited to determining whether the trial court committed a clear abuse of discretion or error of law which controlled the outcome of the case. Error in a charge occurs when "the charge as a whole is inadequate or not clear or has a tendency to mislead or confuse rather than clarify a material issue." **Gorman v. Costello**, 929 A.2d 1208, 1211–1212 (Pa. Super. 2007) (citation omitted). Conversely, "[a] jury instruction will be upheld if it accurately reflects the law and is sufficient to guide the jury in its deliberations." **Cruz**, 801 A.2d at 611 (citation omitted).

> [T]he proper test is not whether certain portions or isolated excerpts taken out of context appear erroneous. We look to the charge in its entirety, against the background of the evidence in the particular case, to determine whether or not error was committed and whether that error was prejudicial to the complaining party."

**Estate of Hicks v. Dana Companies, LLC**, 984 A.2d 943, 972 (Pa. Super. 2009) (quoting **Schmidt v. Boardman Co.,** 958 A.2d 498, 515 (Pa. Super.

-17-

2008)) (subsequent history and quotation omitted). In other words, "there is no right to have any particular form of instruction given; it is enough that the charge clearly and accurately explains the relevant law." *Commonwealth v. Alvin*, 516 A.2d 376, 381 (Pa. Super. 1986) (citation omitted).

Appellants argue that the trial court erred in refusing their proposed points for charge on the standard of care because the jury was not made aware that Appellee owed a heightened duty of care to Appellant given his status as a high risk patient. Appellants contend that in light of defense counsel's closing argument that the standard of care did not require Appellee to conduct vascular testing for non-palpable pulses because other podiatrists did not conduct such testing, the instruction as given permitted the jury to apply an inappropriate subjective standard when evaluating the duty of care issue.

We have carefully reviewed the trial court's instruction concerning the duty of care and conclude that it accurately explained the law to guide the jury in its deliberations. Despite Appellants' assertion that the jury was not instructed to view the evidence objectively, the trial court properly charged on the reasonable person standard as follows:

> The legal term negligence, otherwise known as carelessness, is the absence of ordinary care that a reasonably prudent person would use in the circumstances presented in a case like this.

Negligent conduct may consist either of an act or failure to act when the party has a duty to do so. In other words, negligence is the failure to do something that a reasonably careful person would be or doing something that a reasonably careful person would not do in light of the all the surrounding circumstances that is evidenced in this case.

It is for you to decide how a reasonably careful person would act in those circumstances established by the evidence in this case.

This case involves medical professional negligence being alleged. Professional medical negligence consists of a negligent, careless or unskilled performance by a physician of the duties imposed on him by the professional relationship with the patient. It is also negligence when a physician shows lack of proper care and skill in performance of a professional act.

N.T., 8/9/13, at 754–755.

The trial court also instructed correctly on the concepts of duty and standard of care as follows:

A physician such as Dr. Snyder must have the same knowledge and skill and use the same care normally used in his medical profession podiatry. A podiatrist whose conduct falls below the standard of care is negligent.

A physician such as Dr. Snyder, who professes to be a specialist in a particular field, in this case podiatric medicine, he must have the same knowledge and skill and use the same care as others in that same medical specialty. A specialist who . . . does not meet this professional standard of care is negligent.

Under the standard of care, a podiatrist must also keep informed of the contemporary developments in his medical profession and his [specialty] and must use current skills and knowledge. In other words, a podiatrist must have up-to-date medical skills and knowledge, and if he fails to keep current or fails to use current knowledge in the medical treatment of his patient, then the podiatrist is negligent.

You must decide whether Dr. Snyder was negligent. If you decide that Dr. Snyder was negligent, then you must determine whether the Defendant's negligence was a factual cause of harm to Mr. Krepps. If you so decide, then you must also decide the amount of money to be awarded to Mr. Krepps for the negligent conduct.

In a medical case, when a doctor or a podiatrist undertakes the treatment of a patient, it is within the scope of that doctor's duty of care to protect his patient against preventable injuries, which could have reasonably been incurred during the treatment and to provide treatment with reasonable medical care.

If a physician does not avail himself of the scientific means and facilities open to him for the collection of the best factual data upon which he is basing his treatment, the result is negligence and failing to incur an adequate factual basis upon which to support that physician's judgment.

Dr. Snyder was required to avail himself of [appropriate] diagnostic tools available in order to secure an adequate factual basis with which to support his judgment.

*Id*. at 757–759.

Appellants fail to identify any legal inaccuracies in the trial court's instruction on medical negligence that would mislead or confuse the jury. Their position that the charge should have been tailored to respond to the particular factual scenario of this matter or to counteract the impact of Appellee's closing argument is unavailing. A party has no right to have a particular form of instruction; it is sufficient if the trial court's charge clearly and accurately explains the relevant law and properly covers the requested point. *Alvin*, 516 A.2d at 381. Likewise, when formulating the jury

instructions, the trial court is not obligated to temper the contents to respond to counsels' arguments. Finding no legal error, we uphold the trial court's jury instruction.

### IV. Motion for Summary Judgment

Appellants filed a Motion for Summary Judgment requesting the court to: 1) determine that Appellee had an affirmative duty to protect Appellant from the foreseeable risk of amputation, and 2) determine the standard of care that applied under the facts of the case. While the motions court agreed that by operation of Rule 4014(b), the averments included in Appellants' Requests for Admissions, identified as Exhibit 36a, *infra*, were deemed admitted for purposes of deciding the motion, it declined to accord a similar designation to those averments that Appellants described as facts without controversy (identified as Exhibit 36b, *infra*). Summary Judgment Opinion, 9/14/12, at unnumbered 5.[6] Thus, in light of outstanding issues of fact and conflicting expert opinions, the motions court denied Appellants' motion for summary judgment. *Id*. at unnumbered 6–7.

Our review of a trial court's order denying summary judgment is plenary, and the trial court's order will be reversed only where it is established that the court committed an error of law or abused its discretion.

---

[6] The motion for summary judgment was adjudicated by a different judge than the jurist who presided over the trial. In his opinion denying post-trial relief, the trial court simply referred to his colleague's opinion denying summary judgment. Trial Court Opinion, 3/4/14, at 13–14.

-21-

*Krauss v. Trane USA Inc.*, 104 A.3d 556, 562–563 (Pa. Super. 2014) (quotation omitted). Summary judgment is appropriate "when the record clearly shows that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." *Weissberger v. Myers*, 90 A.3d 730, 733 (Pa. Super. 2014) (quoting *Hovis v. Sunoco, Inc.,* 64 A.3d 1078, 1081 (Pa. Super. 2013)). The record is viewed favorably to the nonmoving party and only when the facts are so clear that reasonable minds could not differ can a trial court properly enter summary judgment. *Id*.

Appellants first contend that the trial court erred because it did not initially determine the duty owed to Appellant and the standard of Appellee's care arising from that duty, specifically, that Appellee had a duty to protect Appellant from the foreseeable risk of amputation. In this regard, Appellants restate their argument that Appellee's expert's opinion was improperly subjective and did not provide the court or the jury with a valid basis to establish a standard of conduct. Appellants assert that the trial court should have rejected Appellee's expert report and adopt the objective standard of conduct stated in Appellants' experts' report when it adjudicated the summary judgment motion.

As we understand this argument, Appellants are suggesting that the trial court erred when it decided that the conflicting expert opinions here

posed a question of fact because their expert's report correctly described the standard of care applicable in this matter, and Appellees' expert did not do so. In effect, then, Appellants are raising an issue of credibility.

With regard to expert opinions in the context of summary judgment: "It has long been Pennsylvania law that, while conclusions recorded by experts may be disputed, the credibility and weight attributed to those conclusions are not proper considerations at summary judgment; rather, such determinations reside in the sole province of the trier of fact . . . ." **DeArmitt v. New York Life Insurance Co**., 73 A.3d 578, 595–596 (Pa. Super. 2013) (quoting **Glaab v. Honeywell International, Inc.**, 56 A.3d 697–698 (Pa. Super. 2012)) (internal quotation, citations, and quotation marks omitted).

The parties' experts presented conflicting views of the standard of care under the circumstances presented. The motions court was not obligated to accept either formulation. Instead, the motions court decided correctly that the contradictory expert opinions created an issue of fact rendering summary judgment unfitting. In light of the conflicting evidence, it would have been error for the court to disregard Appellee's expert's opinion and accept Appellants' expert's report as establishing the correct standard of care as a matter of law.

Appellants also claim that the trial court abdicated its responsibility established under Restatement of Torts (Second) § 328B to ascertain the duty owed to Appellant and the standard of care required by that duty. Section 328B delineates the functions of the court and the jury in negligence cases and instructs:

In an action for negligence the court determines:

(a) whether the evidence as to the facts makes an issue upon which the jury may reasonably find the existence or non-existence of such facts;

(b) whether such facts give rise to any legal duty on the part of the defendant;

(c) the standard of conduct required of the defendant by his legal duty;

(d) whether the defendant has conformed to that standard, in any case in which the jury may not reasonably come to a different conclusion;

(e) the applicability of any rules of law determining whether the defendant's conduct is a legal cause of harm to the plaintiff; and

(f) whether the harm claimed to be suffered by the plaintiff is legally compensable.

Restatement (Second) of Torts § 328B.

However, the trial court's obligation to render determinations under section 328B is not triggered if there are outstanding questions of fact. As noted in paragraph *d* to Comment on clause a of § 328B, the court in the first instance has the power and duty to decide whether the evidence as to

the facts is such that the jury may reasonably come to more than one conclusion. If only one conclusion may reasonably be drawn, the issue is withdrawn from the jury. However, where the jury may reasonably arrive at either conclusion as to the existence of pertinent facts, the issue is for the jury to decide.

In the instant matter, the motions court determined that the evidence in this matter was vulnerable to different conclusions, and for this reason, summary judgment was inappropriate. Given the opposing opinions of the experts as to the duty owed by Appellee and his standard of care, there was no error in this decision. The motions court was correct that the issues of fact must be submitted to the jury.

Finally, Appellants aver that the motions court mischaracterized the facts they proposed as "established without controversy" as controverted. Appellants claim that the facts they submitted were indisputable because they consisted of admissions made by Appellee in his deposition or medical records and that the motions court should have been accepted as true when deciding the summary judgment motion.[7]

---

[7] Appellants offer scant support for their argument that the facts at issue were never controverted. Other than a generic reference to Exhibit 36b, Appellants do not attempt to defend their premise that the facts it submitted were undisputed. The only specific admission it references, that Appellant had untreated peripheral artery disease that led to amputation, was a Rule 4014 admission that the motions court had deemed admitted. Additionally, the notes from Appellee's medical records that Appellants describe as

Appellants' argument turns the proper standard for adjudicating summary judgment motions on its head. The concept that the summary judgment record is viewed favorably to the *nonmoving* party certainly argues against Appellants' position that the motions court should have accepted their version of the facts as clearly established. The motions court here properly evaluated the record against Appellants and decided it was not in a position to accept controverted facts as established. This was an appropriate exercise of the trial court's authority to award summary judgment only when reasonable minds could not differ on the clarity of the facts. "It is not the court's function upon summary judgment to decide issues of fact, but only to decide whether there is an issue of fact to be tried." *Fine v. Checcio*, 870 A.2d 850, 861–862 (Pa. 2005) (citing Pa.R.C.P. 1035.2(1)). There was no abuse of discretion or error of law in its decision.[8]

---

demonstrating Appellee's awareness that Appellant should have been referred to a vascular surgeon, consisted of Appellee's documentation of Appellant's symptoms. Appellants do not, and cannot contend, that Appellee admitted in these records that an earlier surgical referral was mandated. Indeed, the timing of the referral is one of the debated issues of fact in this litigation.

[8] A further observation on this issue is that our Supreme Court has questioned whether it is within the spirit of the Rules of Civil Procedure to award summary judgment through utilization of deemed admissions. *See Stimmler*, 981 A.2d at 160 n.18.

For all of these reasons, we affirm the judgment in Appellees' favor.

Judgment affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 3/24/2015