**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| SEGAL, SEGAL & LIEBERMAN PRIME ASSOCIATES | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| Appellant | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | No. 1413 EDA 2020 |
| BINYAN 14 SOUTH 3RD STREET LLC AND BINYAN #306 LLC | : | |

Appeal from the Judgment Entered November 12, 2021
In the Court of Common Pleas of Philadelphia County Civil Division at
No(s):  No. 190101235

| | | |
|---|---|---|
| SEGAL, SEGAL & LIEBERMAN PRIME ASSOCIATES | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| Appellant | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | No. 1414 EDA 2020 |
| BINYAN 14 SOUTH 3RD STREET LLC AND BINYAN #306 LLC | : | |

Appeal from the Judgment Entered November 12, 2021
In the Court of Common Pleas of Philadelphia County Civil Division at
No(s):  No. 190101235

| | | |
|---|---|---|
| SEGAL, SEGAL & LIEBERMAN PRIME ASSOCIATES | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| Appellant | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | No. 1522 EDA 2020 |
| BINYAN 14 SOUTH 3RD ST LLC AND BINYAN #306 LLC | : | |

Appeal from the Judgment Entered November 12, 2021
In the Court of Common Pleas of Philadelphia County Civil Division at
No(s): No. 190101235

| | | |
|---|---|---|
| SEGAL, SEGAL & LIEBERMAN PRIME ASSOCIATES | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| Appellant | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | No. 509 EDA 2021 |
| BINYAN 14 SOUTH 3RD ST LLC  AND | : | |
| BINYAN #306 LLC | : | |

Appeal from the Judgment Entered November 12, 2021
In the Court of Common Pleas of Philadelphia County Civil Division at
No(s): No. 190101235

BEFORE:  STABILE, J., KING, J., and PELLEGRINI, J.*

MEMORANDUM BY PELLEGRINI, J.:               **FILED DECEMBER 14, 2021**

Segal, Segal & Lieberman Prime Associates (SSL) appeals from the judgment entered in the Court of Common Pleas of Philadelphia County (trial court) in favor of Binyan 14 South 3rd St. LLC (Binyan 14) in this action concerning the installation of a metal gate blocking a pedestrian alley that it contends also interfered with its recorded easement over Binyan 14's neighboring property.  SSL claims the trial court erred in holding that Binyan 14's installation of the metal gate at the entrance of the alley was allowed

---

* Retired Senior Judge assigned to the Superior Court.

- 2 -

because it was permitted by the City of Philadelphia and that it did not interfere with its easement. We affirm.

**I.**

**A.**

The relevant facts and procedural history of this case are as follows. The parties own adjacent properties located at 3rd and Market Streets in Philadelphia and this case involves a longstanding dispute regarding an easement. A four-foot wide pedestrian alley runs for 40 feet alongside Binyan 14's South 3rd Street property and connects with the easement over its property that serves as an egress to 3rd Street from the back of SSL's Market Street property. SSL's property is not adjacent to the alley.

Before Binyan 14 began construction on the then-vacant lot, SSL brought an action in March 2013 to have recognized a prescriptive easement to preserve rear access from its building to 3rd Street. In May 2014, this action was settled when the parties entered a Reciprocal Easement Agreement permitting full and complete ingress and egress between the respective properties. The easement agreement was recorded in the Philadelphia Office of the Recorder of Deeds.

While construction of the Binyan 14 building was underway, in 2016, SSL again initiated litigation because Binyan 14 had dug a ten-foot hole that purportedly interfered with its easement rights. In September 2016, the trial court entered an order providing in relevant part that: "The easement will be

at least 36" wide at all points and at least 10' high as previously agreed." (Order, 9/21/16).

**B.**

This dispute began in December 2017 when Binyan 14 installed a locked metal gate where the alley opens to 3rd Street. City Planning photographs taken in 1972 and 2005 show that there was a gate with a locking mechanism. In January 2019, SSL filed the underlying complaint advancing claims of nuisance, interference with easement rights seeking ejectment and injunctive relief, as well as an award of punitive damages. In November 2019, SSL filed a motion for summary judgment contending that it was entitled to entry of judgment in its favor "because it is undisputed that Defendants installed a locked gate that restricts and interrupts access and use of the public alley, without Plaintiff's permission or consent and without the necessary permits, approvals and inspections." (Motion for Summary Judgment, 11/04/19, at 1, Paragraph 2).

The trial court denied the motion and held a one-day bench trial on February 21, 2020. The court heard testimony from the following witnesses: Glen Segal and Joseph Lieberman as partners in SSL; Ian Seidenwar as a principal of Binyan 14; Randall Barron, a Preservation Planner with the Philadelphia Historical Commission of the City of Philadelphia; Craig Deutsch, a partner in the architectural firm that prepared the plans for the Binyan 14 property; Robert Short, the general contractor (GC) that oversaw construction

of the property including the gate; and Mike Schley, a resident of the apartment building abutting the easement area.

Mr. Segal, a partner in SSL, testified that SSL has used the easement area and adjacent public alley since it acquired the building in 1996 as a means of egress from SSL's building to Market Street. He explained "to go from our building to the street for our egress, we need to go first through the easement over 14th South 3rd [Street]. And then that connects into the public alley. And then we would have to go out the public alley to have complete access to the street." (N.T. Trial, 2/21/20, at 17-18). He testified that the locking gate at the public alley interferes with SSL's use of the easement and public alley and access to its property.[1] Mr. Segal recalled learning of the gate's installation "sometime in January 2019" while he was "inspecting the property and found the gate, and I wasn't able to get in." (*Id.* at 21). Binyan 14 did not seek SSL's consent before installing the gate or immediately provide the access code to enter the gate, although Binyan 14 did provide it at some point through the parties' attorneys. On cross-examination, Mr. Segal testified that he had never used the button marked "Exit" located on the wall to the right of the gate to exit the alley. (*Id.* at 24).

Mr. Lieberman, another SSL partner, testified that he was involved in the acquisition of the SSL property in 1996 and that "many times I would park

---

[1] The parties stipulated that the width of the gate is 32¾ inches.

on 3rd Street [and walked] up the public alley and then up the easement area [to the] rear door of our property." (*Id.* at 35-36). He testified that SSL was seeking punitive damages in the form of reimbursement of legal fees and court costs in the amount of $25,000.00 because of Binyan 14's repeated interference with the use of the public alley and easement area.

On cross-examination, Mr. Lieberman acknowledged that he did not know if the alley could be exited by pressing the exit button on the wall next to the gate, and that although his attorney had the code to enter the alley through the keypad system, he did not have it himself because he "never thought to ask him for it." (*Id.* at 43).

Mr. Seidenwar, Binyan 14's principal, stated its deed reads that the "property is bounded by a four-foot-wide alley," and that it is 40-feet deep. (*Id.* at 47). Mr. Seidenwar testified that the alley "is not owned by Binyan 14" and is instead owned by "the public." (*Id.*). He provided the access code to enter the gate to SSL when his counsel asked that he do so, and averred that he did not think it was "an issue because I always thought the easement was meant for just emergency exit." (*Id.* at 55). Mr. Seidenwar has owned the property since 2010 and it was a vacant lot at the time of purchase because a fire had destroyed the previous building. He submitted a building permit in June 2011 and was granted permission to build on his entire property, at which time there were no recorded easements on the lot. He was issued a building permit and the locked gate was installed in December 2017

towards the end of the construction phase. Mr. Seidenwar testified that an inspector from the City of Philadelphia Department of Licenses and Inspections (L&I) came out to the property to review the gate before issuing a certificate of occupancy (CO).

Mr. Seidenwar confirmed that to enter the gate, entry of a code is required, and that to exit through the gate, "you have to press an exit button to get out." (*Id.* at 71). He explained that he reduced his building size to widen the alley from 40 feet to 60 feet during construction "for the safety of the people." (*Id.* at 78). Prior to installation of the gate, "there was always trespassing, people jumping over barbwires . . . graffiti." (*Id.* at 79). Mr. Seidenwar averred that there have been no similar issues since installation of the gate and that the company has not been issued any violations by any municipal agency related to the gate.

Mr. Barron, a preservation planner for the City of Philadelphia, testified that the Binyan 14 property is listed on the Philadelphia Register of Historical Places and that all construction plans for any property on this list must be approved by the Historical Commission. The plans for Binyan 14 were submitted to the Historical Commission in 2011 and following approval, they were stamped in October 2016. Mr. Barron also identified Historical Commission photographs of the property dated in 1972 and 2005, both of which depicted a gate with a locking mechanism.

Mr. Deutsch testified that he prepared the architectural plans for the Binyan 14 property that were submitted to L&I and the Historical Commission for approval. Over objection by SSL's counsel, Deutsch testified on direct examination:

Q. Do you recall at any point during the approval process with the Department of L&I whether a concern was raised about the installation of the gate as shown on the plan?

[SSL's counsel]: Objection. Calls for hearsay.

The Court: Overruled. She's asking if he recalls personally.

[Deutsch]: No.

The Court: You don't recall or were there?

A. I don't recall any objections being made.

Q. And same question with regard to the Historical Commission. Do you recall whether or they raised any objection with regard to installation of a gate as put on the plans?

A. No objection to the gate. The gate was, actually, something that was asked to be drawn in our drawings.

[SSL's counsel]: Objection. This is hearsay, Your Honor.

The Court: It's not hearsay. He is the architect. The builder.

[SSL's counsel]: He said it was something that was asked to be drawn into the drawings. That's hearsay.

The Court: Overruled, Counsel.

(*Id.* at 108-09).

Mr. Deutsch explained that when the drawings were submitted to the Historical Commission, they "show an elevation [and] the compass of the

block, including that gate that existed there in time and then the building of a new building, so they wanted me to show that a gate was there. So it's drawn in elevation, approved by them." (*Id.* at 109). He testified that he visited the Binyan 14 property before he prepared the plans for it and that "there was an existing gate with a locking mechanism" at that time. (*Id.* at 110). The plans approved by the City entities read: "New metal g[ate] primed and painted." (*Id.* at 112).

Mr. Short testified that part of his duties as the general contractor on the Binyan 14 property included overseeing installation of the gate and that he was on site every day for one year. He was made aware of instances of trespassing prior to installation of the gate and he personally observed homeless people in the alley twice. He stated that "several times when we came in, in the morning, we saw homeless people that were in the egress area—the easement area on our jobsite hanging out there for the evening. And we had to remove them—ask them to leave. . . . They were using it . . . for a bathroom back in there." (*Id.* at 120-21). He then testified on direct examination over objection by counsel for SSL on grounds of hearsay:

> Q. At some point, did you have reason—prior to the locked gate being installed, did you at some point put up a temporary barrier where the locked gate is?
>
> A. Yes. We had to close off the alleyway and we also had to close off another section where there—there was a building missing on the side of the property that we had to close off as well. Two different locations we had to close off.

- 9 -

Q: And was the reason for that to prevent trespassing and other such issues?

A. Yes.

Q. Did you do that of your own accord or was that because of any issues or other violations given to you?

A. It was demanded of me to close it off.

[SSL's counsel]: Objection. She's eliciting hearsay, Your Honor.

The Court: Overruled. . . .

A. Yes, I was told to close them off.

[SSL's counsel]: Objection, Your Honor.

The Court: Overruled.

Q. And who was it that told you to close it off?

A. James Mason.

[SSL's counsel]: Objection.

The Court: Overruled.

Q. And James Mason is an inspector with L&I?

A. Yes.

(**Id.** at 121-22).[2]

---

[2] At several points during defense counsel's examination of witnesses, counsel for SSL made numerous objections which the court viewed as excessive and legally baseless. It admonished counsel accordingly. (**See** N.T. Trial, at 26, 41-42, 72).

Mr. Short explained that Inspector Mason reviewed the entire property before issuing it a CO, and that as part of that review, he tested the open and closing mechanisms of the gate. Mr. Mason provided him with the dimensions for the gate and "everything that was on that gate was told to me by James Mason to put on it." (*Id.* at 127). Mr. Mason issued the CO providing that the building was in accord with the plans for the property approved by the L&I Department, and in compliance with the requirements of the Philadelphia Building Construction and Occupancy Code and the Pennsylvania Uniformed Construction Code.

Mr. Schley testified that he and his wife reside in a second-floor apartment abutting the easement area and that the fire escape connected to their residence leads into that area. He stated that anyone passing through the alley and easement can see into their residence, which is not visible from the public street. (*See id.* at 132-33).

## C.

Several days after the trial concluded, the trial court entered an order that provided:

> [Binyan 14] shall, within 90 days, **remove and replace** the existing alley gate adjacent to 308 Market Street with a gate that conforms to the Court order dated 9/21/16. Specifically, that **the gate opening shall be at least 36 inches wide**. It is further ordered that the [Binyan] must immediately provide plaintiff with any codes, keys or any such information needed to have complete and unfettered access through the gate at all times for as long as plaintiff retains title to 308 Market Street.

(Order, 2/25/20) (emphasis added). The trial court denied SSL's claims seeking monetary damages and punitive damages.

SSL filed a motion for post-trial relief on March 2, 2020, but the litigation was delayed because of the Covid-19 pandemic. SSL filed a notice of appeal on June 5, 2020, and it and the trial court complied with Rule 1925(b). **See** Pa.R.A.P. 1925(a)-(b).[3] The trial court then denied SSL's post-trial motion on December 10, 2020, following oral argument. The trial court entered judgment on the verdict on November 12, 2021.[4]

_____

[3] SSL filed a premature notice of appeal before the trial court entered judgment on the verdict. We will consider the premature notice of appeal as filed on the date the court entered judgment. **See** Pa.R.A.P. 905(a)(5) ("A notice of appeal filed after the announcement of a determination but before the entry of an appealable order shall be treated as filed after such entry and on the day thereof.").

[4]

> Our standard of review in non-jury trials is to assess whether the findings of facts by the trial court are supported by the record and whether the trial court erred in applying the law. Upon appellate review[,] the appellate court must consider the evidence in the light most favorable to the verdict winner and reverse the trial court only where the findings are not supported by the evidence of record or are based on an error of law. Our scope of review regarding questions of law is plenary.

**Woullard v. Sanner Concrete & Supply**, 241 A.3d 1200, 1207 (Pa. Super. 2020) (citation omitted).

- 12 -

## II.

## A.

On appeal, SSL challenges the trial court's denial of its motion for summary judgment and its verdict in favor of Binyan 14 on several overlapping bases concerning its objection to installation of the locking gate. The crux of SSL's claim is that Binyan 14 interfered with its use of the easement by restricting the use of the public alley by constructing the gate. With regard to the public alley, SSL argues that neither L&I nor the Historical Commission had the authority to grant property rights to Binyan 14, which is "in active violation of Pennsylvania law for having restricted access to a public space." (SSL's Brief, at 40). It relies on this Court's decision in **Philadelphia v. Teller**, 50 Pa. Super. 260 (1912) to support its argument.[5]

As to its appeal from the summary judgment motion, we note that we have recently stated in **Xtreme Caged Combat v. Zarro**, 247 A.3d 42, 50–51 (Pa. Super. 2021), *appeal denied*, 260 A.3d 924 (Pa. 2021), that "once a case goes to trial and evidence is presented at trial, the denial of summary

---

[5] In **Teller**, the defendant constructed a permanent awning above a public sidewalk despite the refusal of the chief of the bureau of highways to issue a permit for the structure and its receipt of notice from the agency prohibiting its installation. **See Teller**, **supra** at 263. On appeal, the defendant challenged the trial court's issuance of an injunction requiring it to remove the awning. This Court affirmed the trial court's decision because the awning "structure is not authorized by any valid municipal regulation" or by any statutory authority. **Id.** at 266.

judgment is moot and the sufficiency of the evidence must be analyzed based on the trial record. ***Whitaker v. Frankford Hospital of City of Philadelphia***, 984 A.2d 512, 517 (Pa. Super. 2009)."[6]

Even if we were to address this issue, we agree with the trial court's rationale that there were genuine issues of material fact that required the denial of the summary judgment motion. It reasoned:

> Appellants argued in its motion for summary judgment that it is undisputed that the locked gate created a nuisance and interfered with its free and interrupted use of the alley. Additionally, SSL alleged that Binyan 14 failed to obtain the necessary permits and approvals for installation of a locked gate. Defendants responded by providing evidence showing that SSL always had free and unfettered access to the alley way, and furthermore that they obtained approval from two (2) city agencies (Philadelphia Historical Commission and Department of Licenses and Inspections) prior to installation of the gate. Whether the gate encroached upon the alley in such a way as to

---

[6] Immediately following this passage, at footnote 7, we stated in ***Xtreme Caged Combat*** that:

> We note that our Supreme Court and this Court in reported decisions subsequent to ***Whitaker*** have in fact ruled on the merits of denials of summary judgment in appeals following a hearing or trial. ***See Woodford v. Insurance Department***, ––– Pa. –––, 243 A.3d 60, 68-71 (2020) (affirming denial of summary judgment on the merits in appeal from judgment following evidentiary hearing); ***Krepps v. Snyder***, 112 A.3d 1246, 1257-60 (Pa. Super. 2015) (affirming denial of plaintiff's motion for summary judgment on the merits in appeal from judgment following trial). These decisions, however, have not addressed the issue of whether the factual record at trial supersedes the denial of summary judgment and whether the denial of summary judgment is appealable as a separate issue following trial. No decision has overruled ***Whitaker***, and it therefore remains binding precedent.

restrict or interfere with its unobstructed use was subject to differing factual assertions by the parties. Indeed, testimony at trial was elicited by both parties addressing these issues. Clearly, these were [issues] of fact which needed to be evaluated and determined by a finder of fact requiring denial of the motion for summary judgment.

(Trial Court Opinion, 4/15/21, at 10).

**B.**

SSL also claimed in its summary judgment motion that Binyan 14 impermissibly invaded the public alley by constructing the locked gate. In this case, no one offers any testimony of how this four-foot wide 40-foot passageway, generously called an alley, was created. There is no evidence that it was ever dedicated to the City of Philadelphia or that it was accepted by the City within 21 years required to accept the dedication.[7]

The trial court found that there was no unlawful impediment to the alley because the gate was installed with permission of the City:

---

[7] Assuming that it was even dedicated, it could be considered a "paper alley." A "paper street" refers to a street that has been expressly dedicated by a landowner and appears on the plan or on other publicly-recorded documents such as subdivision plans but has never been accepted or opened by the municipality or used by the public and has no existence except on paper. *See Tobin v. Radnor Township Board of Commissioners*, 597 A.2d 1258 (Pa. Cmwlth. 1991). Generally, the time limit for a municipality to accept an offer of dedication is 21 years. *See* 36 P.S. 1961; *see also Kao v. Handleman*, 728 A.2d 345 (Pa. 1999); *Kramer Appeal*, 266 A.2d 96 (Pa. 1970); *Rahn v. Hess*, 106 A.2d 461 (Pa. 1954). This provision was enacted "in order to relieve land from the burden of public servitude created by a dedication in which the dedicated streets have been laid out but not opened." *Lillo v. Moore*, 704 A.2d 149, 153 (Pa. Super. 1997).

The facts of this case are wholly distinguishable [from **Teller**]. Here, there was testimony that the plans for the building, including the gate, were approved by both L&I and the Historical Commission. Defendant's general contractor testified that the inspector from L&I came out to inspect he property, including the gate, prior to issuing the Certificate of Occupancy. The general contractor testified that L&I inspected the gate, including testing the locking and unlocking mechanisms and issued a Certificate of Occupancy based on the inspection. Furthermore, no citations from L&I have been issued since installation of the gate with locking mechanism. Based on the foregoing, Binyan 14 had permission from the City, by way of a permit from L&I, to install the gate with the locking mechanism across the entrance of the alleyway. Because the gate did not comply with the prior Order that required the opening of the alley way to be 36 inches, the court found that Binyan 14 was in violation of that Order, and therefore had to make the appropriate correction to the gate to maintain the 36 inch width of the alley way.

(**Id.** at 12).

## C.

SSL contends that there is not sufficient evidence to support the conclusion that the City required installation because it depends on hearsay testimony that was introduced over its objections. It first asserts that Mr. Short's testimony consisted of "almost entirely" of hearsay and takes issue with his statement that "James Mason told Mr. Short that the public alley way needed to be closed off." (SSL's Brief, at 49). SSL contends that this testimony was unfairly prejudicial where Mr. Mason "was not called as a witness by either party [and] may not even exist." (**Id.**). SSL also challenges Mr. Deutsch's testimony that the Historical Commission directed him to include a gate in the architectural drawings. SSL maintains that because these

statements were offered into evidence to prove the truth of the matter asserted, the trial court should have excluded them.[8]

Our Rules of Evidence define "hearsay" as an out-of-court statement made by a declarant offered into evidence to prove the truth of the matter asserted. **See** Pa.R.E. 801(c). For purposes of hearsay, "the 'declarant' is defined as the person who makes the out-of-court statement, not the person who repeats it on the witness stand." ***Adams v. Rising Sun Med. Ctr.***, 257 A.3d 26, 35 (Pa. Super. 2020) (citing Pa.R.E. 801(b)).

Generally, hearsay is inadmissible because it is deemed untrustworthy since it was not given under oath and subject to cross-examination. **See id.** "A statement that is not offered for its truth, however, is not hearsay." ***Castellani v. Scranton Times, L.P.***, 124 A.3d 1229, 1244 (Pa. 2015) (citation omitted). The comment to Rule 801 explains: "There are many situations in which evidence of a statement is offered for a purpose other than to prove the truth of the matter asserted." Pa.R.E. 801, Comment. "Sometimes a statement has direct legal significance, whether or not it is true.

---

[8] Our standard of review of an evidentiary ruling made by the trial court is extremely narrow. "The admission or exclusion of evidence is a matter within the sound discretion of the trial court, which may only be reversed upon a showing of a manifest abuse of discretion." ***Charlton v. Troy***, 236 A.3d 22, 35 (Pa. Super. 2020), *appeal denied*, 251 A.3d 772 (Pa. 2021) (citation omitted). "To constitute reversible error, an evidentiary ruling must not only be erroneous, but also harmful or prejudicial to the complaining party." ***Id.*** (citation omitted).

For example, one or more statements may constitute an offer, an acceptance, a promise, a guarantee, a notice, a representation . . . [or] compliance with a contractual or statutory obligation." *Id.* Additionally, "communications that are not assertions are not hearsay . . . [including] offers, **instructions** [and] warnings[.]" *Id.* (emphasis added).

In this case, the trial court explained that it admitted Mr. Short's testimony regarding Inspector Mason because it:

> Was not being offered for the truth of the matter, but rather for another purpose—to explain the general contractor's actions. Furthermore, Mr. Short testified, without objection, that the inspector from L&I came to view the gate after the construction was completed and tested the gate to see if it worked and that thereafter the Certificate of Occupancy was issued. This is testimony about actions that were taken by the contractor in order to obtain a [CO]. . . . [E]ven if it was error to admit this testimony, it was harmless error insofar as the same information was admitted through other testimony.

(Trial Ct. Op., at 14).

The record reflects that the trial court admitted the subject statements not for their truth, but to explain Mr. Short's reasons for his actions with regard to the gate as the GC on the Binyan 14 building project.[9] Similarly, the testimony of Mr. Deutsch concerning the Philadelphia Historical Commission's directives was offered to illustrate his reasons for including the gate on the

---

[9] Insofar as SSL questions whether Inspector Mason "even exists," the record plainly reflects that his name was listed on the CO issued for the property marked as Exhibit 123 at trial.

- 18 -

architectural plans, *i.e.*, because depiction of gate was necessary to show the proper elevations. The challenged testimony also directly countered SSL's specific allegation that Binyan 14 installed the gate without first obtaining the requisite City approvals, and to demonstrate that the opposite was the case in that the gate was installed in order **to comply** with City requirements. SSL's claims that the court erred in overruling its hearsay objections merit no relief.[10] Moreover, we agree with the trial court's conclusion that to the extent

_____

[10] In a related claim, SSL challenges the trial court's admonition of its counsel at trial to discontinue objecting during defense counsel's examination of witnesses. SSL argues that counsel's objections were well founded and were necessary to prevent the admission of hearsay testimony presented by Binyan 14 witnesses, including Mr. Short's testimony concerning Inspector Mason. (**See** SSL's Brief, at 54-56). We first note that as previously discussed in detail above, the objected-to testimony did not constitute hearsay as it was admitted for a purpose other than to prove the truth of the matter asserted. Additionally,

> At several points during the trial, the Court had to warn Appellant's counsel against raising objections to testimony without any legal basis. After a series of objections made by counsel that were overruled, the Court admonished counsel . . . 'I'm not going to tolerate the obsessive objecting. . . . And I'm going to warn you again. You've objected to almost every question being asked . . . you are walking a line here with unnecessary objections, so you need to stop.'
>
> In directing counsel not to make specious objections, the Court was reasonably exercising judicial control of the proceedings in order to ensure an orderly trial, and maintaining order and decorum in the courtroom, which is entirely appropriate. **See Commonwealth v. Collins**, 70 A.3d 1245, 1255 (Pa. Super. 2013). Counsel clearly was not hampered by the Court's admonitions, as was demonstrated by the fact that he continued to make objections without legal grounds throughout the trial.

*(Footnote Continued Next Page)*

any of the objected-to testimony did constitute hearsay, any error in its admission was harmless in view of the totality of the unobjected-to evidence indicating that plans for the project were approved by all City entities.

**D.**

SSL next challenges the trial court's dismissal of Counts I through IV of its complaint concerning Ejectment, Nuisance, Interference with Easement Rights and Injunctive Relief seeking removal of the gate. SSL claims that its right to relief is clear because it is undisputed that Binyan 14's installation of the gate at the entrance of the alley prevented its free and uninterrupted use of the easement area and impacted its ability to use the alley as a form of ingress to and egress from its property. SSL maintains that a permanent injunction requiring removal of the gate is warranted where money damages cannot compensate it for the interference of its property rights. (**See** SSL's Brief, at 57-63).

"Ejectment is an action filed by a plaintiff who does not possess the land but has a right to possess it, against a defendant who has actual possession." **Becker v. Wishard**, 202 A.3d 718, 721 (Pa. Super. 2019) (citation omitted).

---

(Trial Court Op. at 14-16) (citing N.T. Trial, at 26, 41-42, 72).

After review of the trial transcript with a focus on the contested objections, we find that the court appropriately sought to limit counsel's repetitive objections once it made its position on the matter clear in order to move the proceedings forward. SSL's challenge to the court's rulings merits no relief.

"Ejectment is a possessory action only, and can succeed only if the plaintiff is out of possession, and [the plaintiff] has a present right to immediate possession." *Id.* (citation omitted). A nuisance is "the unreasonable, unwarrantable, or unlawful use by a person of his own property . . . producing such material annoyance, inconvenience, discomfort or hurt that the law will presume a consequent damage." *Caruso-Long*, *supra* at 238 (citation omitted).

Relief on an interference with easement rights claim may be obtained in a dispute between the owners of a dominant and servient estate under circumstances where one party unreasonably interferes with the other's use of the easement. *See Kao v. Haldeman*, 728 A.2d 345, 349 (Pa. 1999). Finally, "to be entitled to a permanent injunction, a party must establish a clear right to relief, and must have no adequate remedy at law, *i.e.,* damages will not compensate for the injury." *Morgan v. Millstone Res. Ltd.*, 2021 WL 5314395 at *12 (Pa. Super. filed Nov. 16, 2021) (citation omitted). "Unlike a preliminary injunction, a permanent injunction does not require proof of immediate irreparable harm." *Id.* (citation omitted).

The trial court explained its rationale for its dismissal of the counts as follows:

> All of these causes of action hinge on one question— does the gate interfere with Plaintiff's right to free and uninterrupted use of the alleyway. The Court determined that there was some infringement on SSL's use of the alleyway to the extent that the opening to the gate did not comply with the prior Order that stipulated that it had to be 36 inches, and therefore ordered that

the gate be changed to comply with the measurement. However, Appellant failed to prove that the gate itself was a meaningful hinderance to the use of the alley. Appellant's own representatives testified that even though their attorney had the code, they never even bothered to ask for it throughout the pendency of this litigation. Further, Appellant's representatives ignored the fact that there was an exit button that, when pushed, opened the gate.

* * *

The act of having to press the exit button to leave the alley and use a keypad to enter the alley was not an unreasonable obstruction and did not prevent SSL's free and uninterrupted access to South 3rd Street. The fact that the principals chose not to avail themselves of the access code that was provided to their attorney at the outset of the litigation is a hinderance that they brought on themselves in a failed attempt to further their position in this lawsuit. Instead, this unreasonable position undermines the entire basis of Plaintiff's position.

(Trial Ct. Op., at 17-18).

We agree with the trial court's assessment that SSL had free and uninterrupted access to the alley through use of the entry code provided to their counsel and the exit button installed near the gate. We are also mindful that although Binyan 14 constructed the gate in December 2017, the principals at SSL did not notice its installation until more than one year later in January 2019, calling into question how frequent its use of the easement actually was and undermining its claim of a gross interference with its property rights. The testimony at trial also shows that Binyan 14 installed the gate in order to comply with City requirements, and that it was necessary in order to prevent instances of trespassing and loitering in the alley. Based on the foregoing, we conclude that the trial court properly dismissed the counts of

the complaint and limited the award of injunctive relief to replacement of the gate to provide the previously ordered 36-inch width.[11]

Judgment affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 12/14/2021

---

[11] SSL also claims the trial court erred in permitting Binyan 14 to raise a post-trial oral argument that it failed to preserve by not raising it during trial. SSL contests Binyan 14's brief argument that the alley is not publicly-owned because "during trial the parties were in agreement and [Binyan's] representative admitted that the Public Alley Way is public." (SSL's Brief, at 65). Ignoring that SSL has waived this issue for its failure to raise it in its Rule 1925(b) statement, there is no indication that Binyan 14 is presently representing that it owns the subject alley. In its brief, Binyan plainly states that the gate at the entry of the alley "is not within [its] property line." (Binyan 14's Brief, at 3). At trial, Mr. Seidenwar unequivocally testified to the alley's public status. (*See* N.T. Trial, at 47) ("Q. Do you know who owns the alley? A. The public."). Because there is no legitimate dispute as to Binyan 14's lack of ownership of the alley, this contention is meritless.