J-A05036-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| KALEVELYN CHAVERS | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| 1605 VALLEY CENTER PKY, LP; PENN | : | No. 1045 EDA 2022 |
| CAP GROUP 3 GP, LLC; PENN CAP | : | |
| PROPERTIES PORTFOLIO, LP; AND | : | |
| GRUBB & ELLIS MANAGEMENT | : | |
| SERVICES, INC. | : | |

Appeal from the Judgment Entered April 12, 2022
In the Court of Common Pleas of Northampton County
Civil Division at No(s): C-48-CV-02016-6041

| | | |
|---|---|---|
| KALEVELYN CHAVERS | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| 1605 VALLEY CENTER PKY, LP; PENN | : | No. 1183 EDA 2022 |
| CAP GROUP 3 GP, LLC; PENN CAP | : | |
| PROPERTIES PORTFOLIO, LP; AND | : | |
| GRUBB & ELLIS MANAGEMENT | : | |
| SERVICES, INC. | : | |
| | : | |
| | : | |
| APPEAL OF: PENN CAP PROPERTIES | : | |
| PORTFOLIO, LP | : | |

Appeal from the Judgment Entered April 12, 2022
In the Court of Common Pleas of Northampton County
Civil Division at No(s): C-48-CV-02016-6041

BEFORE: LAZARUS, J., KUNSELMAN, J., and MURRAY, J.

MEMORANDUM BY MURRAY, J.:                    **FILED MARCH 30, 2023**

Kalevelyn Chavers (Appellant) appeals from the $202,814.23 judgment entered following a jury verdict in her favor, and against 1605 Valley Center Pky, LP; Penn Cap Group 3 GP, LLC; and Penn Cap Properties Portfolio, LP (PCPP).[1]  PCPP cross-appeals the judgment.  Upon careful review, we affirm in part, vacate in part, and remand with instructions.

The trial court summarized:

On July 8, 2016, [Appellant] … commenced this suit via complaint. In her complaint, [Appellant] alleged that on July 22, 2014, she tripped on exposed wires at her place of employment, Easton Hospital [(employer)], causing her to fall and sustain injuries. [Appellant] alleged that her injuries occurred due to the negligence of [PCPP], which owned and maintained the property….

Trial Court Opinion, 3/16/22, at 2.  In a June 17, 2016, Compromise and Release (C&R), Appellant settled her claim against employer and its workers' compensation carrier for $100,000.00.  As a result of the settlement, the employer/carrier assigned their subrogation rights to her.  C&R, 6/17/16.

On July 8, 2016, Appellant filed this action against PCPP.  The trial court explained:

On November 8, 2021, a jury trial commenced in the instant matter.  On November 12, 2021, the jury returned a verdict in favor of [Appellant], finding [PCPP] 100% negligent in causing the accident[,] and awarded [Appellant] one hundred sixty thousand

_____

[1] The parties agreed 1605 Valley Center Pky, LP, and Penn Cap Group 3 GP, LLC, "are part of and belong to" PCPP.  N.T., 11/12/21, at 275.  The parties further agreed that Grubb & Ellis Management Services, Inc., "at all times as property manager[,] acted on behalf [of] and at the direction of PCPP."  ***Id.*** We collectively reference the defendants as PCPP.

- 2 -

dollars ($160,000.00) in damages. The Civil Prothonotary docketed the verdict following the conclusion of the trial. On November 17, 2021, [Appellant] filed her motion for delay damages. [Appellant] and [PCPP] then filed their respective post-trial motions on November 22, 2021….

Trial Court Opinion, 3/16/22, at 2.

The trial court subsequently awarded delay damages and molded the verdict. Order, 3/16/22, at 1. The court denied the parties' remaining post-trial motions. *Id.* On April 12, 2022, the trial court entered judgment against PCPP for $202,814.23. Appellant timely appealed, and PCPP filed a cross-appeal. The parties and the trial court have complied with Pa.R.A.P. 1925.

Appellant presents the following issues for our review:

1. Did the trial court commit prejudicial error of law and/or abuse [its] discretion by denying the admission of past medical expenses and/or the lien for same, allowing the jury to be told that such an award would be a double recovery, and by refusing to mold the verdict to include past medical expenses of $228,347.10 (plus delay damages and post-judgment interest), and/or in failing to grant a new trial on damages for the valuation of [Appellant's] past recoverable medical expenses?

2. Did the trial court commit prejudicial error of law and/or abuse of discretion by permitting the jury to be advised that [Appellant] did not have to pay back the indemnity lien due to the assignment of the lien to her, depriving [Appellant] of an additional award of at least $154,711.66 (plus delay damages and post-judgment interest), such that the court should have either molded the verdict to include those damages, or grant a new trial concerning the valuation of those damages?

3. Did the trial court commit prejudicial error of law and/or abuse its discretion by precluding Dr. [Christopher] Ferrante's estimate as to the cost of future medical expenses, such that a new trial on future medical expenses should have been ordered?

- 3 -

4. Did the court commit prejudicial error of law and/or abuse of discretion by refusing to grant a new trial on the Disfigurement Claim since the verdict of $0 for disfigurement is clearly against the weight of the evidence?

5. Did the court commit prejudicial error of law and/or abuse of discretion by refusing to grant a new trial on the claim for past, present, and future pain and suffering, embarrassment and humiliation, and loss of enjoyment of life, since an award of only $25,000 is against the weight of the evidence, and probably the result of court error in admitting evidence of employer negligence?

6. Did the court commit prejudicial error of law and/or abuse of discretion in refusing to grant a new trial on the issue of loss of past and future household services, for which the jury's award of $0 was clearly against the weight of the evidence?

Appellant's Brief at 4-6 (capitalization modified).

On cross-appeal, PCPP presents the following issues:

1. Did the trial court err by denying [PCPP's] motion for judgment NOV or alternatively for new trial, and underlying motions for summary judgment, nonsuit and directed verdict, as the evidence was insufficient to support the verdict and establish that [PCPP] owed or breached a duty to [Appellant] given the clear terms of the Lease and as it bore no responsibility for installing and maintaining the wires [Appellant] tripped over, as the verdict was also against the weight of the evidence?

2. Is a new trial required due to errors at trial which individually and cumulatively so prejudiced [PCPP] that the verdict was punitive and based on sympathy, speculation and confusion, which included:

   a. denying [PCPP's] proposed verdict slip and accepting [Appellant's] version, and submitting and erroneous verdict slip causing jury confusion; and

   b. failing to charge the jury on open and obvious conditions and rejecting [PCPP's] proposed instruction?

3. Is [PCPP] entitled to entry of judgment NOV in its favor or a new trial, as the jury's finding that [Appellant's] comparative

- 4 -

negligence was not a factual cause of harm was against the weight of the evidence, is not supported by the record evidence, and is contrary to law, as [Appellant] admitted she knew of the wires for at least 2 years before the incident but did not advise her employer or [PCPP], was looking ahead and not where she was walking, and, could have walked on the right side of her desk which was free of potential tripping hazards?

4. Did the trial court err by granting [Appellant's] Motion for Delay Damages which should have been denied or significantly reduced based on delay beyond [PCPP's control], including the Covid pandemic and judicial emergency?

5. Did the trial court err by denying [PCPP's] Motion for Remittitur, and reducing and remitting the damages award to [an] amount consistent with the weight of the evidence?

PCPP's Brief at 6-8.  We first address the issues raised by Appellant.

**Appellant's Appeal at 1045 EDA 2022**

**(1)   Whether the trial court committed [a] prejudicial error of law and/or abuse of discretion by denying admission of past medical expenses and/or the lien for the same, allowing the jury to be told that any award of the lien amount would be a double recovery, and by refusing to mold the verdict to include past medical expenses of $228,347.10 (plus delay damages and pos-judgment interest), and or failing in granting a new trial on damages for the valuation of [Appellant's] past recoverable medical expenses.**

Appellant argues the trial court "erred by failing to admit the past medical expenses and permit recovery of the same[.]"  Appellant's Brief at 17.  Appellant claims the trial court improperly deemed her past medical expenses unrecoverable from PCPP.  *See id.* at 18.  According to Appellant,

- 5 -

she gave up rights under the [Workers' Compensation Act (WCA)[2]] to obtain that lien assignment. The [trial court] summarily deprived [her] of the benefit of her bargain in favor of pardoning the responsible tortfeasor.

*Id.* at 18 n.2 (footnote added).

Appellant further argues the trial court impermissibly permitted PCPP to present evidence of

the [subrogation] lien, the fact that all of [Appellant's] past medical bills were paid, as well as much of her wage loss as set forth in the C&R Agreement, that any award to [Appellant] on the items covered by the lien would be payable to [Appellant], and therefore are not recoverable ….

*Id.* at 20. Appellant maintains the subrogation lien should have been admissible *at her option*, as established in ***Nazarak v. Waite***, 216 A.3d 1093 (Pa. Super. 2019). Appellant's Brief at 21. Quoting ***Nazarak***, Appellant claims she can recover the expenses paid by the workers' compensation carrier. *Id.* at 22.

Appellant explains the public policy of avoiding a windfall was not implicated because she "paid for the assignment of the subrogation right." *Id.* (capitalization modified). *Id.* Appellant argues, "Because [she] was assigned the lien for good and valuable consideration, [] the tortfeasor gets away with paying none of the medical bills it negligently caused [Appellant] to incur." *Id.* at 24.

---

[2] ***See*** Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. §§ 1-1041.4, 2501-2710.

Appellant also claims the preclusion of an award for her past medical expenses deprived her "of property rights without due process." Appellant's Brief at 26 (capitalization modified). Additionally, Appellant insists the trial court's ruling will discourage settlements of workers' compensation cases and other cases involving third-party carriers. *Id.* at 29. According to Appellant, the trial court should have molded the verdict to include past medical expenses or award a new trial on damages. *Id.* at 42, 48. Appellant directs our attention to the testimony of her expert, who opined her past medical expenses were reasonable and necessary. *Id.* at 34. Further, Appellant points to the amount of the subrogation lien evidences the reasonable value of the medical expenses. *Id.* at 37. Because the jury found PCPP 100% liable for her injuries, Appellant asks this Court to either mold the verdict or grant a new trial limited to damages. *Id.* at 48.

As this Court has explained:

[W]hen analyzing a decision by a trial court to grant or deny a new trial, the proper standard of review, ultimately, is whether the trial court abused its discretion.

….

Moreover, our review must be tailored to a well-settled, two-part analysis:

We must review the court's alleged mistake and determine whether the court erred and, if so, whether the error resulted in prejudice necessitating a new trial. If the alleged mistake concerned an error of law, we will scrutinize for legal error. Once we determine whether an error occurred, we must then determine whether the trial court abused its discretion in ruling on the request for a new trial.

*Marion v. Bryn Mawr Tr. Co.*, 253 A.3d 682, 694 (Pa. Super. 2021) (citations omitted).

Upon review, the trial court's denial of Appellant's claim for past medical expenses implicates 42 Pa.C.S.A. § 6141 and the collateral source doctrine. Section 6141 provides, in part:

> **(a) Personal injuries. —** Settlement with or any payment made to an injured person or to others on behalf of such injured person with the permission of such injured person or to anyone entitled to recover damages on account of injury or death of such person shall not constitute an admission of liability by the person making the payment or on whose behalf the payment was made, unless the parties to such settlement or payment agree to the contrary.
>
> ….
>
> **(c) Admissibility in evidence. —** Except in an action in which final settlement and release has been pleaded as a complete defense, **any settlement or payment referred to in subsections (a) and (b) shall not be admissible in evidence on the trial of any matter.**

42 Pa.C.S.A. § 6141(a), (c) (emphasis added).

"The collateral source rule, which is intended to protect tort victims, "provides that payments from a collateral source **shall not diminish the damages otherwise recoverable from the wrongdoer**." *Nazarak*, 216 A.3d at 1101-02 (emphasis added, citation omitted). In *Nazarak*, this Court concluded evidence of a workers' compensation settlement was not admissible in similar circumstances:

> [T]here is no dispute that the "settlement" at issue (the workers' compensation compromise and release) was not made by [a]ppellants, and [a]ppellants were not in any way a party to the

settlement. Rather, the settlement was made between Nazarak and his employer/employer's workers' compensation carrier, Liberty Mutual. Thus, according to the plain language of [42 Pa.C.S.A. §] 6141(a), while the settlement does not constitute an admission of liability by Nazarak's employer or Liberty Mutual, it has no effect on the liability of [a]ppellants (the third party tortfeasors). 1 Pa.C.S.A. § 1903 (indicating words and phrases are given their common and approved usage); 1 Pa.C.S.A. § 1921 (indicating when words are clear and free from ambiguity they may not be disregarded).

… Subsection (c) indicates that a settlement referred to in Subsection (a) "shall not be admissible in evidence on the trial of any matter." 42 Pa.C.S.A. § 6141(c). **Accordingly, when Subsections (a) and (c) are read together, arguably, the settlement at issue was not admissible in the instant trial.**

*Nazarak*, 216 A.3d at 1103 (emphasis added).

Here, the trial court precluded an award for Appellant's past medical expenses, stating "allowing [her] to collect trial damages and receive the benefit of the workers' compensation settlement would create a windfall for [Appellant]." Trial Court Opinion, 3/16/22, at 11. This was error. *See* 42 Pa.C.S.A. § 6141(a); *Nazarak*, 216 A.3d at 1103. Concern over a windfall to Appellant is overshadowed by the injustice of absolving PCPP of liability for its negligence. *See, e.g., Charles v. Giant Eagle*, 522 A.2d 1, 3 (Pa. 1992) (in a case involving a settling co-tortfeasor, "concern over the windfall to the plaintiff, if appellee were to be required to pay its full *pro rat[a]* share, is far overshadowed by the injustice of the result they urge.").

Because the jury found PCPP 100% negligent for Appellant's fall, the trial court erred in precluding Appellant's claim for her past medical expenses:

$228,347.10.[3]  We therefore vacate the trial court's judgment and remand for the trial court to mold the verdict to include Appellant's past medical expenses, plus delay damages and interest.  *See* Pa.R.C.P. 238(a)(1) ("in all civil cases wherein the plaintiff seeks monetary relief for bodily injury, delay damages shall be added to compensatory damages awarded to the plaintiff against each defendant found to be liable by the jury.").

**(2)  Whether the trial court committed prejudicial error of law and/or abuse of discretion by permitting the jury to be advised that Appellant did not have to pay back the indemnity lien due to the assignment of the lien to her, depriving Appellant of an additional award of at least $154,711.66 (plus delay damages and post-judgment interest), such that the court should have either molded the verdict to include those damages, or grant a new trial concerning the valuation of those damages.**

Appellant challenges the jury's award of $75,000 for her lost past and future wages.  Appellant's Brief at 59.  Appellant argues:

> It is clear that the jury subtracted the $154,711.66 [previously paid by the carrier] from past and future loss of earnings. [Appellant] was forced to argue that the workers' compensation payments only compensated [two-thirds of her] the past wages. The jury award of the final 1/3rd, $75,000.00 (rounded off), the jury thought would make the [Appellant] whole on the past wage loss.  The problem is that [Appellant] was entitled to collect the entire lien[,] plus [the portion of the] wage loss [] not paid by workers' compensation, and instead she collected none of the lien. This must be corrected either by molding the verdict to include

_____

[3] The subrogation lien identifies the past medical expenses paid by the carrier. ***See Moorhead v. Crozer Chester Med. Ctr.***, 765 A.2d 786, 789 (Pa. 2001) ("The expenses for which a plaintiff may recover must be such as have been actually paid, or such as, in the judgment of the jury, are reasonably necessary to be incurred."), ***overruled in part by Northbrook Life Ins. v. Commonwealth***, 949 A.2d 333, 337 (Pa. 2008).

the $154,71166, or by granting a new trial to value the past and future loss of earnings and earning capacity.

*Id.* Appellant provides no additional argument.

Appellant challenges the jury's verdict as against the weight of the evidence.

> The decision to grant or deny a motion for a new trial based upon a claim that the verdict is against the weight of the evidence is within the sound discretion of the trial court. Thus, the function of an appellate court on appeal is to review the trial court's exercise of discretion based upon a review of the record, rather than to consider *de novo* the underlying question of the weight of the evidence. An appellate court may not overturn the trial court's decision unless the trial court palpably abused its discretion in ruling on the weight claim. Further, in reviewing a challenge to the weight of the evidence, a verdict will be overturned only if it is so contrary to the evidence as to shock one's sense of justice.
>
> ….
>
> A trial court's determination that a verdict was not against the interest of justice is [o]ne of the least assailable reasons for denying a new trial. A verdict is against the weight of the evidence where certain facts are so clearly of greater weight that to ignore them or to give them equal weight with all the facts is to deny justice.

*Tong-Summerford v. Abington Mem'l Hosp. & Radiology Grp. of Abington, P.C.*, 190 A.3d 631, 659 (Pa. Super. 2018) (quotation marks and citations omitted).

Our Supreme Court explained:

> While a jury's verdict and damages award are generally insulated from challenge, the grant of a new trial may be required to achieve justice in those instances where the original trial, because of taint, unfairness, or error, produces something other than a just and fair result, which is the principle goal of judicial proceedings. … [A] jury verdict may be set aside as inadequate when it appears to

- 11 -

have been the product of passion, prejudice, partiality, or corruption, or where it clearly appears from uncontradicted evidence that the amount of the verdict bears no reasonable relation to the loss suffered by the plaintiff. Where the jury's verdict is so contrary to the evidence as to shock one's sense of justice a new trial should be awarded. [The Court] cautioned that it was within the province of the jury to assess the worth of the testimony and to accept or reject the estimates given by the witnesses, and if the verdict bears a reasonable resemblance to the proven damages, it is not the function of the court to substitute its judgement for the jury's….

*Mader v. Duquesne Light Co.*, 241 A.3d 600, 612-13 (Pa. 2020) (citations and quotation marks omitted).

Our review shows the trial court properly instructed the jury it could award Appellant her past lost earnings. N.T., 11/10/21, at 266-67. The trial court did not instruct the jury to make any deductions from its award. "We presume that juries follow the trial court's instructions." *Renninger v. A&R Mach. Shop*, 163 A.3d 988, 1000 (Pa. Super. 2017).

In denying Appellant relief, the trial court explained: "Considering the evidence produced at trial and respecting the jury's findings of fact, this court does not deem it appropriate to disturb the jury's verdict." Trial Court Opinion, 3/16/22, at 14. Upon review, we discern no abuse of discretion; the jury's verdict bears a reasonable resemblance to the proven damages. *See Mader*, 241 A.3d at 613. Appellant's issue merits no relief.

**(3) The Trial Court committed prejudicial error of law and/or abused its discretion by precluding Dr. Ferrante's estimate as to the cost of future medical expenses, such that a new trial on future medical expenses should have been ordered.**

- 12 -

Appellant argues the trial court disallowed Dr. Ferrante's testimony about "the reasonable value of [Appellant's] future medical expenses[.]" Appellant's Brief at 60. Appellant claims the absence of this testimony caused "the jury to speculate on the costs thereof, which resulted in a finding of $0[] for future medical expenses." *Id.* Appellant emphasizes Dr. Ferrante's testimony that Appellant's prosthesis would wear out, and "given her age, she had about a 50-50 chance of having to have another knee replacement in the future." *Id.* According to Appellant, PCPP objected to Dr. Ferrante's estimated future medical expenses of $70,000 - $100,000 as outside the scope of his expert report. *Id.* Appellant asserts the trial court improperly sustained the objection, because

> experts can expand on and amplify their pretrial reports, as long as they do not proffer a new theory or present trial testimony inconsistent with the fair scope of their report.

*Id.* (emphasis omitted).

Appellant contends Dr. Ferrante, who testified as her treating physician, "was never purely" an expert witness. *Id.* at 61. Appellant argues that, since PCPP objected, PCPP had the burden of proving Dr. Ferrante "did not form those opinions during the course of treatment." *Id.* Appellant posits that Dr. Ferrante's testimony should have been admitted, "because the opinion was not acquired or developed with an eye toward litigation." *Id.* Appellant asserts, "given that there was no objection to the testimony that a future medical procedure may be needed, [] the defense would not have been

surprised that such procedures cost money." *Id.* at 62. Finally, Appellant maintains the cost of a medical procedure is more a question of fact, not opinion. *Id.*

A plaintiff must present expert testimony to establish a right to compensation for future medical damages:

> It is well-settled that an item of damage claimed by a plaintiff can properly be submitted to the jury only where the burden of establishing damages by proper testimony has been met. In the context of a claim for future medical expenses, the movant must prove, **by expert testimony**, not only that future medical expenses will be incurred, but also the reasonable cost of such services….

*Mendralla v. Weaver Corp.*, 703 A.2d 480, 485 (Pa. Super. 1997) (*en banc*) (emphasis added; citations omitted).

The trial court correctly and concisely disposed of this issue:

> A new trial is warranted if the trial court committed a clear abuse of discretion or an error of law controlling the outcome of the case. *Angelo v. Diamontoni*, 871 A.2d 1276, 1279 (Pa. Super. Ct. 2003). "[T]he direct testimony of the expert at the trial may not be inconsistent with or go beyond the fair scope of his or her testimony in the discovery proceedings as set forth in the deposition, answer to an interrogatory, separate report, or supplement thereto." Pa.R.C.P. 4003.5(c). Here, at trial, [PCPP] objected to Dr. Ferrante's testimony estimating that a future knee surgery would cost [Appellant] $70,000.00 - $100,000.00 because such testimony is beyond the scope of Dr. Ferrante's report. **Indeed, Dr. Ferrante's report did not set forth an estimate regarding the cost of a potential future knee replacement. Furthermore, Dr. Ferrante testified that [Appellant] had a fifty percent chance of requiring another knee replacement in the future.** [Appellant's] need for a future surgery is purely hypothetical, and the future damages are not actual. Therefore, the trial court did not abuse its discretion in limiting Dr. Ferrante's testimony.

Trial Court Opinion, 3/16/22, at 12-13 (emphasis added). **Whether the Court committed prejudicial error of law and/or abuse of discretion by refusing to grant a new trial on the disfigurement claim since the verdict of $0 for disfigurement is clearly against the weight of the evidence.**

**(4)    Whether the court committed prejudicial error of law and/or abuse of discretion by refusing to grant a new trial on the claim for past, present, and future pain and suffering, embarrassment and humiliation, and loss of enjoyment of life, since an award of only $25,000 is against the weight of the evidence, and probably the result of Court error in admitting evidence of employer negligence.**

**(5)    Whether the court should have granted a new trial on assessing value of loss of past and future household services, for which the jury's award of $0 is clearly against the weight of the evidence.**

In her fourth, fifth and sixth issues, Appellant claims the verdict is contrary to the weight of the evidence. In her fourth issue, Appellant challenges the jury's award of $0 for knee disfigurement. Appellant's Brief at 63. Appellant states: "Scarring is a compensable type of disfigurement." *Id.* at 67. Appellant advises she displayed her surgical scar to the jury. *Id.* at 63. Although she includes photographs of her knee in her brief, Appellant concedes that no photographs were presented or admitted into evidence at trial. *Id.* at 64. Appellant directs our attention to her testimony about the impact of the scar on her lifestyle and self-esteem. *Id.*

Appellant claims: "The fact of scarring … from the tort is not debatable given the award of past and future lost income." *Id.* at 65. Appellant cites

*Kopytin v. Aschinger*, 947 A.2d 739, 743-44 (Pa. Super. 2008), as holding

that

> [a j]ury verdict in [a] personal injury case which awarded
> damages only to compensate for unreimbursed medical expenses,
> contradicted [the] jury's finding that [the] driver received injuries
> of a type that normally involved pain and suffering, and therefore,
> reversal of the award and [a] new trial on damages was required.

Appellant's Brief at 66-67.

Similarly, in her fifth issue, Appellant claims the jury awarded her a

"grossly inadequate sum" of $25,000.00 for her pain, suffering,

embarrassment, humiliation, and her loss of enjoyment of life. *Id.* at 73.

Appellant asserts that, because of the accident, she underwent a partial knee

replacement,

> extensive physical therapy, a total knee replacement, a Dural leak
> which involved excruciating pain and suffering due to spinal fluid
> around her brain and spinal cord being drained during her …
> procedure, a manipulation under anesthesia, and a surgical repair
> of her Dural leak, together with lifetime disability, impairment,
> and pain and suffering….

*Id.* Appellant references evidence of her physical abilities prior to the

accident, and her pain following the accident and medical procedures. *Id.* at

74-77.

In her sixth issue, Appellant argues the jury's failure to award damages

for her inability to perform household services is against the weight of the

evidence. *Id.* at 81. Appellant asserts that her vocational expert placed a

value on these services. *Id.* According to Appellant, the jury was not free to

disregard this testimony and "simply pretend the damages did not exist." *Id.*

- 16 -

We are cognizant of our standard and scope of review, stated above. *See Tong-Summerford*, 190 A.3d at 659.

Instantly, the trial court declined to award Appellant a new trial, stating:

> Considering the evidence produced at trial and respecting the jury's findings of fact, this court does not deem it appropriate to disturb the jury's reasonable verdict….

Trial Court Opinion, 3/16/22, at 13-14. Upon review, we discern no abuse of discretion.

"[A] jury is always free to believe all, part, some, or none of the evidence presented." *Avery v. Cercone*, 225 A.3d 873, 879 (Pa. Super. 2019). "[G]enerally the determination of whether the pain is severe enough to be compensable is left to the jury." *Van Kirk v. O'Toole*, 857 A.2d 183, 186 (Pa. Super. 2004).

> [T]here are injuries to which human experience teaches there is accompanying pain. Those injuries are obvious in the most ordinary sense: the broken bone, the stretched muscle, twist of the skeletal system, injury to a nerve, organ or their function, and all the consequences of any injury traceable by medical science and common experience as sources of pain and suffering.

*Boggavarapu v. Ponist*, 542 A.2d 516, 518 (Pa. 1988). The jury, having seen and heard Appellant's testimony and that of her doctor and other witnesses, "is not required to accept everything or anything [they] said, even if their testimony was uncontradicted." *Bronchak v. Rebmann*, 397 A.2d 438, 440 (Pa. Super. 1979). "The "determination of what is a compensable injury is uniquely within the purview of the jury." *Majczyk v. Oesch*, 789

A.2d 717, 725-26 (Pa. Super. 2001) (citation omitted); *accord Avery*, 255

A.3d at 879.

At trial, Appellant testified about her scar from her knee replacement

surgery:

> [I]t just changed my whole lifestyle. I can't wear dresses anymore above or below the knee. They have to be long. Because the scar, it stems from above my knee past my knee. It's very thick and it's just ugly.
>
> It's very thick and ugly to look at. So I have developed a complex of anybody looking at me, if I was to go to the doctor, anywhere, even if I'm at a family member's house and I have to wear – I would undress, say, for my sisters or anyone, I just have a complex.
>
> I don't want anybody to look at it. I will cover it up, you know. Or pajamas. I don't wear the nightgown anymore if I am sleeping over. I just wear pajama pants.

*Id.* at 153. As stated above, Appellant showed her scar to the jury. *Id.* at

154.

It is undisputed Appellant had knee replacement surgery following the

accident, which resulted in pain and suffering and a scar. However, the jury

also heard evidence that Appellant had significant knee issues predating her

July 22, 2014, workplace injury. Appellant acknowledged seeing her doctor

on January 12, 2009, for left knee pain. N.T., 11/9/21, at 121. At that time,

Appellant's x-rays showed a significant lesion on her medial femoral condyle

in her left knee. *Id.* at 122. Appellant again complained of left leg and back

pain on May 14, 2009. *Id.* at 124. On September 23, 2012, Appellant visited

an emergency care center because she felt a "pop" in her left knee. *Id.*

On May 28, 2013, Appellant had an arthroscopic surgery on her left knee. *Id.* at 126. On August 2, 2013, Appellant informed her doctor she had swelling in her left knee, but no pain. *Id.* at 127. Appellant received steroid injections in her left knee on February 2, 2014, March 3, 2014, and March 10, 2014. *Id.* at 128-29.

On May 9, 2014, Appellant visited her doctor for pain in both knees. *Id.* at 132-33. Appellant told her doctor that she continued to have knee pain. *Id.* at 133-34. Appellant's x-rays at the time showed sclerosis and narrowing of the left knee, with large spur formation. *Id.* at 136. Appellant acknowledged the x-rays showed moderate to advanced arthritis in both knees. *Id.* at 137.

Appellant presented the deposition testimony of Dr. Ferrante, an orthopedic surgeon with Lehigh Valley Health Network. *See* N.T. (Trial), 11/10/21, at 168. Dr. Ferrante testified that, in preparing his expert report, he reviewed Appellant's prior medical records and her history of treatment for left knee pain. N.T., (Deposition), 11/3/21, at 28-30. Regarding knee swelling before and after her injury, Dr. Ferrante opined:

> The perfect situation would be to have an MRI before the trauma and an MRI after the trauma to see, which we don't have. But [Appellant] seemed to be functioning very well from her report[] to me long after this [and] she was functioning pretty well, so she probably didn't have the edema before the injury.

*Id.* at 54-55. Dr. Ferrante saw Appellant on January 6th and 28th, 2016, and ultimately performed a total knee replacement. *Id.* at 61.

In sum, the jury heard extensive evidence concerning Appellant's disfigurement, the lost value of her household services, and her pain and suffering. Ultimately, the jury chose to award nothing for disfigurement or the lost value of Appellant's household services, and awarded $25,000 for Appellant's pain and suffering. Regarding the first two types of damages, this Court has recognized that not all injuries are "serious enough to warrant compensation." **Gold v. Rosen**, 135 A.3d 1039, 1044 (Pa. Super. 2016) (citation omitted). The jury was free to conclude that Appellant's disfigurement and lost household services were not caused by PCPP's negligence or "the sort of transient rub of life for which compensation is not warranted." **Id.**

Regarding the alleged inadequacy of the pain and suffering award, our Supreme Court has stated that a reversal of a jury verdict on the grounds of inadequacy is appropriate "only where the injustice of the verdict stands forth like a beacon." **Davis v. Mullen**, 773 A.2d 764, 766 (Pa. 2001) (citation and brackets omitted). Here, the trial court, which oversaw the presentation of evidence first-hand, concluded that the jury verdict with respect to these three types of damages did not warrant relief. **See** Trial Court Opinion, 3/16/22, at 14 ("Considering the evidence produced at trial and respecting the jury's findings of fact, this court does not deem it appropriate to disturb the jury's, reasonable verdict."). Appellant has not convinced us that the trial court abused its discretion. As such, Appellant's challenges do not merit relief.

**Appeal of PCPP: No. 1183 EDA 2022**

**(1)   Whether the trial court erred by denying PCPP's motion for Judgment notwithstanding the verdict or for a new trial, as the evidence was insufficient to support the verdict and establish that PCPP owed or breached a duty to Appellant, and the verdict was also against the weight of the evidence.**

PCPP first challenges the sufficiency of the evidence underlying the verdict.   PCPP's Brief at 44.   PCPP argues, "The evidence at trial was insufficient to establish [PCPP] was negligent, *i.e.*, owed or breached a duty of care to [Appellant] …." *Id.* at 45.   PCPP asserts the trial court erred by not granting a nonsuit, a directed verdict, or judgment notwithstanding the verdict. *Id.*   According to PCPP:

> [PCPP's] duties with regard to the property are unambiguously set forth in the Lease and Property Management Agreement [(Lease)], and were **solely** to manage the property, maintain common areas, and to provide the IT network and infrastructure. [Employer] installed the equipment and wires, not [PCPP], and [PCPP] did not provide credit card machines or computers to its tenants.   There was no evidence that [PCPP] bore any responsibility for the condition of the wires or manner in which they were left on, or taped to the floor, or to install and maintain the wires.   The Lease specifically excluded telecommunications wiring, outlets and equipment from [PCPP's] duties….

*Id.* at 46 (emphasis in original).   PCPP further asserts that Appellant's own expert "admitted and acknowledged that under the lease[,] telecommunications wires are excluded[.]" *Id.*

PCPP points out that employer installed the equipment and wires, not PCPP. *Id.*   PCPP argues:

> The record is devoid of any evidence that [PCPP] was advised of, or had notice of a hazardous wire condition, and it had no duty of

- 21 -

inspection here. The lease required [employer] to keep the premises in a neat and orderly condition and comply with all laws (including the [Americans with Disabilities Act, 42 U.S.C. §§ 12101 *et seq.*]), ordinances, notices, orders, rules, regulations and requirements regulating the subject property.

*Id.* (citations omitted).

PCPP additionally challenges the jury's finding it was 100% liable for Appellant's injury. PCPP's Brief at 47. PCPP argues, "The evidence at trial overwhelmingly established that [PCPP] did not owe or breach a duty of care to [Appellant]." *Id.* at 48. PCPP cites for support the testimony of its expert mechanical engineer, Dr. Jason Kiddy. *Id.* According to PCPP, Dr. Kiddy opined that PCPP

had no responsibility for, and did not contribute to [Appellant's] trip and fall; that [PCPP] did not obstruct a means of egress from [Appellant's] desk in regard to the wires; and [employer] bore the duty to maintain the space where the incident occurred, not [PCPP].

*Id.* at 48-49 (citations omitted). Upon review, we are not persuaded by PCPP's argument.

We have explained:

Our standard[s] of review when considering the motions for a directed verdict and judgment notwithstanding the verdict [JNOV] are identical. We will reverse a trial court's grant or denial of a [directed verdict or JNOV] only when we find an abuse of discretion or an error of law that controlled the outcome of the case. Further, the standard of review for an appellate court is the same as that for a trial court.

There are two bases upon which a [directed verdict or JNOV] can be entered; one, the movant is entitled to judgment as a matter of law and/or two, the evidence is such that no two reasonable minds could disagree that the outcome should have been rendered

- 22 -

in favor of the movant. With the first, the court reviews the record and concludes that, even with all factual inferences decided adverse to the movant, the law nonetheless requires a verdict in [its] favor. Whereas with the second, the court reviews the evidentiary record and concludes that the evidence was such that a verdict for the movant was beyond peradventure.

*Hall v. Episcopal Long Term Care*, 54 A.3d 381, 395 (Pa. Super. 2012)

(citations omitted).

The trial court explained:

[PCPP] argues [Appellant] was not owed a duty, and therefore, [PCPP] could not have breached a duty that resulted in [Appellant's] injuries; [PCPP] contend[s] that all of [its] duties and obligations relating to the property are defined in the contract documents. [PCPP] state[s] that the duties discussed in the contract include managing the property, maintaining the common areas, and providing the IT network and infrastructure. The contract excludes from [PCPP's] duties telecommunication wiring, outlets, equipment, and any associated wires connecting to those items. [PCPP] reason[s … it was] not responsible for maintaining the wires [Appellant] tripped over and [is] entitled to judgment as a matter of law.

[Appellant], however, argued [PCPP] indeed owed her a duty. [Appellant] asserted [PCPP] retained sufficient control over the premises to impose a duty to protect [Appellant] from foreseeable harm. [PCPP's] control over the property was evidenced by the lease agreement, building rules, [PCPP's] exclusive right to service the property, [PCPP's] maintenance and janitorial responsibilities, and inspections of the property. Certainly, genuine issues of material fact existed regarding the issue of duty. As such, the issue of duty was property submitted to the jury, and the trial court did not err in denying [PCPP's] pre-trial motion[.]

Trial Court Opinion, 3/16/22, at 16.

The record supports the trial court's findings, and we discern no error.

*See, e.g.*, N.T., 11/8/21, at 167, 176-77 (PCPP's president, Lisa Pektor,

testifying employer paid a maintenance fee), 177 (Pektor testifying employer

can put in a work order for, *inter alia*, exposed wires), 177-78 (Pektor testifying PCPP personnel are instructed to notify PCPP of dangerous conditions). Because the testimony showed a question of fact existed regarding PCPP's responsibilities, relief is not warranted.

**(2) Whether a new trial is required due to the errors at trial which individually and cumulatively so prejudiced PCPP that the verdict was punitive and based on sympathy, speculation, and confusion.**

    **(a) Whether the trial court erred by denying PCPP's proposed verdict sheet and accepting Appellant's verdict slip, and submitting an error-filled verdict slip, which caused jury confusion.**

PCPP argues the trial court erred in denying its proposed verdict slip and accepting Appellant's proposed slip. PCPP's Brief at 50. PCPP asserts it asked to list on the slip *only* the actual owner of the property – PCPP. *Id.* However, the trial court accepted Appellant's proposed slip listing each defendant individually. *Id.* According to PCPP,

> [l]isting all four Defendants **individually by name**, instead of just Defendant property owner [PCPP], was clearly prejudicial, as the jury was unable to properly consider and contrast the alleged negligence of [PCPP] against [Appellant's] contributory negligence, and fairly assess the percentage of negligence to each….

*Id.* (emphasis in original).

PCPP further argues that the verdict slip erroneously listed damages previously excluded by the trial court, including past medical expenses. *Id.* at 52. Notwithstanding, PCPP acknowledges the line item for past medical

expenses was crossed off on the verdict slip. *Id.* PCPP asserts it "should have been left off the verdict sheet altogether." *Id.* (emphasis omitted).

Our standard of review regarding a trial court's denial of a motion for a new trial is limited: "The power to grant a new trial lies inherently with the trial court and we will not reverse its decision absent a clear abuse of discretion or an error of law[,] which controls the outcome of the case." *Maya v. Johnson & Johnson & McNeil-PPC, Inc. (In re McNeill-PPC, Inc.)*, 97 A.3d 1203, 1224 (Pa. Super. 2014). In conducting review, we employ a two-part analysis: First, we determine if an error occurred. If so, we ascertain "whether the error resulted in prejudice necessitating a new trial." *Czimmer v. Janssen Pharms., Inc.*, 122 A.3d 1043, 1051 (Pa. Super. 2015). Under the second aspect of this analysis, the "consideration of all new trial claims is grounded firmly in the harmless error doctrine[.]" *Knowles v. Levan*, 15 A.3d 504, 507 (Pa. Super. 2011). The error in question must have affected the verdict. *Id.*

> The trial court rejected PCPP's claim regarding the verdict slip:
>
> [PCPP] argue[s] that the court instead accepted [Appellant's] verdict sheet. However, this is not entirely accurate. The final verdict sheet that the .court submitted to the jury was a compromise between [Appellant's] and [PCPP's] proposed verdict slips. At [PCPP's] request and over [Appellant's] objection, the court removed any reference to past medical expenses from [Appellant's] proposed verdict slip. The final verdict slip considered [Appellant's] and [PCPP's] respective positions, and the court edited the verdict slip accordingly.

Trial Court Opinion, 6/3/22, at 16.

We discern no error or abuse of discretion by the trial court. The verdict slip's line item for past medical expenses was crossed out. *See id.* Further, the trial court instructed the jury as to damages it could award:

> [Appellant] is claiming the following damages: She's claiming future medical expenses. She's claiming past and future loss of earnings and earning capacity. She's claiming loss of household services and past and future services. She's claiming past, present and future pain and suffering. And she's also claiming embarrassment, humiliation, and loss of enjoyment of life.
>
> If you find in favor of [Appellant], you should consider these damages and then return a verdict in a single lump sum that will be added at the bottom.
>
> Future medical expenses are all medical expenses that you find [Appellant] will incur in the future for the diagnosis and treatment of her injuries if that was proven here in court. Future medical expenses include compensable medical expenses, example, physician services, hospital care, nursing care, drug costs and rehabilitation. To recover future medical expenses, she must prove that the medical care would be reasonably required and that the amount of expenses claimed reasonable.

N.T., 11/12/22, at 266. The trial court additionally explained the verdict slip allowed the jury to award damages for

> Future medical expenses, past loss earnings, future loss earning capacity, loss of household services, past and future -- past, present and future pain and suffering, embarrassment, humiliation and loss of enjoyment of life. That's all one category in the paragraph []. And [the next item] is disfigurement. If you find those damages, itemize it and add up the total.

*Id.* at 281. Again, "we presume that juries follow the trial court's instructions." *Renninger*, 163 A.3d at 1000.

Finally, our review discloses PCPP cites no authority for its position that listing all defendants on a verdict slip constitutes error. As such, PCPP's claim

merits no relief. **See Coulter v. Ramsden**, 94 A.3d 1080, 1088 (Pa. Super. 2014) ("We need not reach the merits of this issue because the argument section of [the a]ppellant's brief merely consists of general statements unsupported by any discussion and analysis of relevant legal authority."); **In re R.D.**, 44 A.3d 657, 674 (Pa. Super. 2012) ("[I]t is an appellant's duty to present arguments that are sufficiently developed for our review.  The brief must support the claims with pertinent discussion, with references to the record **and with citations to legal authorities**.") (citation omitted, emphasis added).[4]

> **(b)  Whether the trial court erred by failing to charge the jury on open and obvious conditions and rejecting PCPP's proposed instruction and instead charging the jury under Pennsylvania Suggested Standard Jury Instruction § 13.180 (Civil) Plaintiff's Comparative Negligence.**

PCPP argues the trial court improperly used Suggested Standard Jury Instruction § 13.180 (Plaintiff's Comparative Negligence), instead of its proposed instruction on open and obvious conditions.  PCPP's Brief at 54.  PCPP asserts the evidence supported its theory/defense that

> the wire condition was "open and obvious" and that [Appellant] was comparatively negligent, and a charge on this principle was critical to its case….

---

[4] Nevertheless, our review discloses the trial court correctly instructed the jury, "1605 Valley Center Parkway, LP, and Penn Cap Group 3GP, LLC, are part [of] and belong to Penn Cap Properties Portfolio, LP."  N.T., 11/12/21, at 276.

*Id.* PCPP maintains Appellant knew of and walked over the wires for at least two years and did not advise anyone of the condition. *Id.* Further, PCPP claims Appellant was looking ahead, and not where she was walking, when she tripped. *Id.* According to PCPP, Appellant also "could have walked on the right side of her desk which was free of the potential tripping hazards posed by the wires." *Id.* PCPP insists that because Appellant's negligence was not in dispute, the trial court was required to address "any theory or defense that has support in the evidence." *Id.* at 54-55 (quoting *McLintock v. Works*, 716 A.2d 1262, 1265 (Pa. Super. 1998)). PCPP challenges the trial court's conclusion that the standard jury instruction covered this area of law. *Id.* at 55.

> We recognize:
>
> Our standard of review regarding jury instructions is limited to determining whether the trial court committed a clear abuse of discretion or error of law which controlled the outcome of the case. Error in a charge occurs when the charge as a whole is inadequate or not clear or has a tendency to mislead or confuse rather than clarify a material issue. Conversely, "[a] jury instruction will be upheld if it accurately reflects the law and is sufficient to guide the jury in its deliberations."
>
> The proper test is not whether certain portions or isolated excerpts taken out of context appear erroneous. We look to the charge in its entirety, against the background of the evidence in the particular case, to determine whether or not error was committed and whether that error was prejudicial to the complaining party. In other words, there is no right to have any particular form of instruction given; it is enough that the charge clearly and accurately explains the relevant law.

***Krepps v. Snyder***, 112 A.3d 1246, 1256 (Pa. Super. 2015) (citations and some quotation marks omitted). Further, "[w]hile … [Pennsylvania Standard Jury Instructions] are not binding on trial courts, [they] are nonetheless instructive." ***Gorman v. Costello***, 929 A.2d 1208, 1213 (Pa. Super. 2007).

In rejecting this claim, the trial court stated:

> This court did not err in not instructing the jury on "open and obvious conditions." Similar to the compromises made in arriving at a final verdict slip, the court held a conference with counsel to determine the charges that the court should read to the jury. ***See*** Transcript Vol. III pp. 193-96. [PCPP] argue[s] that excluding a charge relating to "open and obvious" conditions is reversible error. This court maintains that it is not. The requested instruction read as follows:

>> The law of Pennsylvania does not impose liability upon the Defendant if it was reasonable for the Defendant to believe that a dangerous condition would be obvious and discovered by Plaintiff. A danger is deemed to be "obvious" when the condition creating the alleged danger is apparent and would be recognized by reasonable persons in the position of the invitee exercising normal perception, intelligence and judgment.

> ***Skalos v. Higgins***, 449 A.2d 601 (Pa. Super. Ct. 1982); ***Carrender v. Fitterer***, 469 A.2d 120 ([Pa.] 1983). [PCPP's] requested charge is essentially an in depth comparative negligence charge derived from case law. This court deemed it more appropriate to use Pennsylvania Suggested Standard Jury Instruction § 13.180 (Civ) Plaintiff's Comparative Negligence. The court read the following instruction to the jury at trial:

>> As a defense, [PCPP] claim[s] that [Appellant's] own negligence was a factual cause of her injury. [PCPP] ha[s] the burden to prove both of the following: that [Appellant] was negligent; and that [Appellant's] negligence was a factual cause of her injury. If you find [Appellant's] percentage of negligence is greater than fifty percent, [Appellant] cannot recover her damages.

Transcript Vol. III pp. 265-66.  This instruction explained the relevant law to the jury in an adequate manner….

Trial Court Opinion, 3/16/22, at 17-18.

Viewing the charge in its entirety, against the background of the evidence presented, we discern no error or abuse of discretion by the trial court.  **See id.**; **see also Krepps**, 112 A.3d at 1256.  This issue does not warrant relief.

**(3)  PCPP is entitled to judgment in its favor or a new trial as the jury's finding that Appellant's comparative negligence was not a factual cause of harm was against the weight of the evidence, and is contrary to law, as Appellant admitted she knew of the wires for at least 2 years before the incident.**

PCPP challenges the jury's finding that Appellant's comparative negligence was not a factual cause of her harm.  PCPP's Brief at 57.  PCPP cites Appellant's testimony that the condition of the wires had existed "[a]s long as I worked out there," which "was a [c]ouple of years."  **Id.** (citation omitted).  PCPP further points to Appellant's admission that she was looking forward, and not at the ground, when she tripped.  **Id.**  PCPP additionally cites evidence that Appellant failed to notify anyone about the wires.  **Id.** at 58. PCPP argues:

> Under Pennsylvania law, [Appellant] had a duty to look where she was going and a duty to avoid a condition that was open and obvious, but failed to do so by her own testimony.

**Id.**  PCPP further emphasizes Dr. Kiddy's opinion that a reasonable person would identify loose wires on the floor as a potentially hazardous condition. **Id.** at 59.  PCPP contends:

[A] jury is entitled to reject any and all evidence up until the point at which the verdict is so disproportionate to the uncontested evidence as to defy common sense and logic….

*Id.*

Again, the trial court explained its rejection of PCPP's claim:

The jury's finding that [Appellant] was not comparatively negligent is not against the weight of the evidence. … The issue of comparative negligence was an issue for the jury to decide as the finder of fact. Based on the consideration of the evidence produced during trial, the jury found [Appellant] was not comparatively negligent. Such a finding does not shock one's sense of justice, and the court will not disturb the jury's findings of fact….

Trial Court Opinion, 3/16/22, at 18. Mindful of our standard of review, we discern no abuse of discretion by the trial court in rejecting this issue challenging the jury's verdict. *See Womack*, 877 A.2d at 1283.

**(4) Whether the trial court erred by granting Appellant's motion for delay damages, which should have been denied or significantly reduced based on delay beyond PCPP's control.**

PCPP argues the trial court should have denied or reduced the award of delay damages. PCPP's Brief at 60. PCPP claims "the mere length of time between the starting date and the verdict is not the sole criterion" for calculating delay damages. *Id.* at 61. PCPP points out the continuance requested by Appellant because of the COVID epidemic, and the Supreme Court's declaration of a judicial emergency. *Id.* at 63-64.

Pa.R.C.P. 238 provides, in relevant part:

**(1)** At the request of the plaintiff in a civil action seeking monetary relief for bodily injury, … damages for delay shall be added to the amount of compensatory damages awarded against each

- 31 -

defendant or additional defendant found to be liable to the plaintiff in the verdict of a jury ….

**(2)** Damages for delay shall be awarded for the period of time from a date one year after the date original process was first served in the action up to the date of the award, verdict or decision.

Pa.R.C.P. 238(a)(1)-(2).

This Court addressed the impact of the COVID judicial emergency on delay damages in **Getting v. Mark Sales & Leasing, Inc.**, 274 A.3d 1251 (Pa. Super. 2022):

> This issue requires us to interpret and apply the Supreme Court's Order and [Pa.R.C.P.] 238. Thus, it presents us with a pure question of law. "As with all questions of law, the appellate standard of review is *de novo*, and the appellate scope of review is plenary." **In re Wilson**, 879 A.2d 199, 218 (Pa. Super. 2005).
>
> Sitting *en banc*, this Court explained the drafters of Rule 238 "specified two, and only two, periods of time to be excluded from the calculation of delay damages …." **King v. SEPTA**, 383 Pa. Super. 420, 557 A.2d 11, 12-13 (Pa. Super. 1989) (*en banc*). Those two excluded periods are "(1) any periods of time after which the defendant has made a written offer of settlement, the offer is continued in effect for at least ninety days or until the commencement of trial, whichever first occurs, the offer is rejected by the plaintiff, and the plaintiff does not recover more than 125 percent of the offer; and (2) any periods of time during which the plaintiff caused delay of the trial." **Id.** (quoting **Miller v. Wise Bus. Forms, Inc.**, 381 Pa. Super. 236, 553 A.2d 443, 446 (Pa. Super. 1989)). Thus, we concluded that Rule 238 has "**not** allowed for the exclusion of periods of delay not caused by either party." **Id.** at 13 (emphasis in original).
>
> ….
>
> COVID-19 and the judicial emergency it created did not diminish the rights of plaintiffs to be made whole, nor did they prohibit defendants from engaging in settlement negotiations or making reasonable offers to help alleviate court dockets. … [S]imply

- 32 -

because the flow of cases had temporary stopped, it does not follow that all legal practice had also ceased. [The defendant] was free at all times during the judicial emergency to increase its offer to induce the [plaintiffs] to settle and thereby to avoid delay damages.

… We do not read the March 18, 2020 Order of the Supreme Court as permitting tortfeasors to reap unjust windfalls from a five[-]month delay that was clearly beyond the control of their victims. … [T]he [defendant] must compensate the [plaintiffs] for using their money during the judicial emergency to the fullest extent of Pa.R.C.P. 238.

*Getting*, 274 A.3d at 1261-62 (emphasis omitted). Consequently, we are unpersuaded by PCPP's claim that the trial court erred in granting delay damages encompassing the COVID judicial emergency. *See id.*

To the extent PCPP challenges the award of delay damages during discovery delays, we reference the comment to Rule 238:

With respect to delay of the trial, **not every procedural delay is relevant to the issue of delay damages, but only such occurrences as actually cause delay of the trial.** For example, failure by the plaintiff to answer interrogatories within thirty days should not affect the award of damages for delay unless the trial was delayed as a result. Otherwise, the introduction of the fault concept and its attendant hearing would create a large new field of court hearings revolving around evidence of dilatory compliance with discovery procedures, the evidence of which would consist almost entirely of the attorneys testifying against each other and could be years old before the hearing. It is felt that present Rule 4019 provides a vehicle, although little used at present, which can timely dispose of delay due to discovery noncompliance regardless of whether or not it delays the trial. The note under proposed Rule 238(b)(2) is a reminder of this alternative remedy to halt delay damages and to expedite preparation of the case for trial.

Pa.R.C.P. 238, comment (emphasis added). Our review discloses no error by the trial court in declining to exclude discovery delays in calculating delay

damages.  ***See id.***  PCPP's challenge to the award of delay damages warrants

no relief.

**(5)  Whether the trial court erred in denying PCPP's motion for remittitur.**

Finally, PCPP argues the trial court erred in denying a remittitur.  PCPP's

Brief at 65.  PCPP argues the jury's award of $160,000 is against the weight

of the evidence "regarding [Appellant's] contributory negligence."  ***Id.***  Again,

PCPP challenges the jury's failure to find Appellant negligent.  ***Id.***

Our review discloses PCPP failed to preserve this issue in its Pa.R.C.P.

227.1 post-trial motion.  ***See*** Trial Court Opinion, 6/28/22, at 2.  Accordingly,

it is waived.  ***See id.***; ***see also Chaulkey v. Roush***, 805 A.2d 491, 494 (Pa.

2002) (recognizing the purpose of Rule 227.1 "is to provide the trial court with

an opportunity to correct errors in its ruling and avert the need for appellate

review.").

For the foregoing reasons, we affirm in part, vacate in part, and remand

for molding of the verdict consistent with this memorandum.

Judgment affirmed in part and vacated in part.  Case remanded with

instructions.  Jurisdiction relinquished.

*Judgment Entered.*

*Joseph D. Seletyn, Esq.*
*Prothonotary*

*Date: 3/30/2023*